In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-8037

KIRSTEN KNUDSEN, CHRIS BAKER,
and VIKKI BAKER,

*Plaintiffs-Respondents*,

*v.*

LIBERTY MUTUAL INSURANCE COMPANY,

*Defendant-Petitioner*.

---

Petition for Leave to Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5924—**Ruben Castillo**, *Judge*.

---

SUBMITTED JANUARY 5, 2006—DECIDED JANUARY 27, 2006

---

Before COFFEY, EASTERBROOK, and MANION, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Liberty Mutual Insurance Company has removed this litigation to federal court a second time, again invoking the Class Action Fairness Act of 2005, 119 Stat. 4 (2005). Last year we held that the initial removal was unavailing, because the suit had been "commenced" in state court before February 18, 2005, the new Act's effective date. 411 F.3d 805 (7th Cir. 2005). Liberty Mutual contended that the only appropriate defendant is Liberty Mutual Fire Insurance Company, which had issued the policies on which plaintiffs sought

to collect. It argued that a mention of Liberty Fire in a proposed amendment to the class definition effectively began a new suit. We thought otherwise, observing that Liberty Mutual remained the only defendant and that the state judge had not acted on the plaintiffs' proposal by adding either new claims or new parties. But we added: "Maybe that lies in store. . . . If in the future Liberty Mutual Fire Insurance Company should be added as a defendant, it could enjoy a right to remove under the 2005 Act, for suit *against it* would have been commenced after February 18, 2005." *Id.* at 807-08 (emphasis in original). Liberty Mutual contends that this has come to pass.

Plaintiffs allege that Liberty Mutual pays unjustifiably little on claims for medical services under workers' compensation and casualty (accident) policies. All three plaintiffs are covered by or have claims derived from policies issued by Liberty Mutual Fire Insurance Company. The suit they commenced in Illinois, however, named as a defendant only its corporate parent, Liberty Mutual Insurance Company.

The complaint did not allege that Liberty Mutual and Liberty Fire are so lax about corporate formalities that their separate existence may be disregarded under veil-piercing principles (those of Massachusetts, where they are incorporated), or that Liberty Fire deceived its insureds into thinking that the policies were backed by a firm with deeper pockets. See *United States v. Bestfoods,* 524 U.S. 51 (1998) (discussing principles of state law that determine parent corporations' liability for acts of subsidiaries and affiliates). Instead the plaintiffs have argued—and the state judge has held—that Liberty Mutual is liable because it did not do enough in discovery to alert plaintiffs' counsel to the need to substitute Liberty Fire as a defendant. Indeed, the state court thought that Liberty Mutual's "concealment" of Liberty Fire's role (despite the fact that only Liberty Fire's name is on the policies) is so egregious that it has entered

a default in plaintiffs' favor on the merits, leaving only damages for consideration.

After our first decision plaintiffs sought more relief—*much* more relief. They asked the state court to hold Liberty Mutual responsible for *all* policies issued by *any* subsidiary or affiliate, about 35 firms in all. Plaintiffs asked, moreover, that all claims for payment by all insureds on all of these policies everywhere in the nation be covered by the default, so that Liberty Mutual would be compelled to pay without proof that an affiliate had failed to honor any policy. It should be enough, plaintiffs contended, that an insurer disbursed less than the medical bill, regardless of any policy's actual terms. This would override co-payment requirements, caps on total indemnity, schedules of allowable fees, and many other common clauses. Finally, plaintiffs proposed that they be certified to represent a nationwide class, and that the court disregard any difference in insurance and workers' compensation laws across the 50 states. Despite decisions by both the Supreme Court of Illinois and this court describing the grave problems with class actions for damages under multiple states' laws, see *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005); *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012 (7th Cir. 2002), the state judge approved plaintiffs' proposal with immaterial changes. The class as certified is: "All insureds of Liberty Mutual Insurance Company, its affiliates and subsidiaries (collectively 'Liberty Mutual'), their third party beneficiaries and their assignees who submitted medical bills covered by a Liberty Mutual insurance policy, and whose claims were paid for less than the medical charge, based upon the application of a medical cost and utilization database."

The order certifying this class was entered on September 29, 2005, well after the Class Action Fairness Act's effective date, and Liberty Mutual immediately filed a notice of

removal. A second removal is proper when based on a new development. See 28 U.S.C. §1446(b) ¶2: "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable". But the district court remanded the proceeding. It held that, because Liberty Mutual remains the one and only defendant, the "commencement" date is still the time of the suit's filing in state court, just as we held on the prior appeal. 2005 U.S. Dist. LEXIS 33102 (N.D. Ill. Dec. 13, 2005). The district judge relied not only on *Knudsen I* but also on two later decisions holding that routine changes in class definitions—the sort that relate back to the original pleading for limitations purposes—do not "commence" new actions. See *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748 (7th Cir. 2005); *Schillinger v. Union Pacific R.R.*, 425 F.3d 330 (7th Cir. 2005).

Liberty Mutual is the original defendant, but it is faced with new claims for relief. Illinois law, which we described in *Schorsch* and *Schillinger*, provides that a new contention relates back to the original complaint (and hence is not a new "claim for relief" or "cause of action") when the original pleading furnishes the defendant with notice of the events that underlie the new contention. See also 735 ILCS §5/2-616(b); *Zeh v. Wheeler*, 111 Ill. 2d 266, 282, 489 N.E.2d 1342, 1349 (1986). *Schorsch* holds that a complaint dealing with instructions in computer chips alleged a single claim, whether the chips were embedded in drum kits for laser printers (as the original complaint alleged) or toner cartridges that work with these drum kits (as the amended pleading added). *Schillinger* holds that a complaint dealing with railroads' use of rights of way stated a single claim no matter how many states the track passed through. Similarly, a complaint alleging that Liberty

Mutual mishandled its "medical cost and utilization database" when adjusting demands for payment of medical bills would be one claim, whether Liberty Mutual or Liberty Fire had issued the policy: the grievance concerns the way that a particular "medical cost and utilization database" works, and the number of different policies or issuers to which a single database and software package applies would be a detail, as long as Liberty Mutual itself did the adjustment work using the contested procedure.

What causes the class definition of September 2005 to initiate new claims is the fact that Liberty Mutual does not adjust all demands for payment of all of its affiliates' policies. For example, Liberty Northwest Corporation, one of Liberty Mutual's affiliates, has adjusted claims against its own policies since 1996 using its own cost-and-utilization software. The complaint initially filed in this case could not have notified Liberty Mutual that plaintiffs contested any decision made by Liberty Northwest—nor did the complaint allege that Liberty Mutual and Liberty Northwest are alter egos. It did not mention any insurer other than Liberty Mutual itself. Our first opinion, issued in June 2005, noted that plaintiffs had not made an alter-ego or veil-piercing argument. Apparently they have changed their tune, but contentions first raised in the second half of 2005 cannot demonstrate that Liberty Mutual was on notice of this claim for relief before February 18, 2005.

Employers Insurance of Wausau provides an even better example. Liberty Mutual acquired Wausau in 1998, so it is part of "Liberty Mutual" under the class definition. Wausau has employed a "medical cost and utilization database" since 1985. It adjusts its own claims, however—obviously so before the acquisition. Yet the class includes all insureds (and their assignees) whose claims were adjusted by Wausau using its own data and methods back to 1985, when Wausau's cost-and-utilization

database was inaugurated. Because of the default, more-over, Liberty Mutual cannot invoke the statute of limita-tions or present any other defense; to be included in the class definition is to be assured of victory. The complaint that Knudsen filed in March 2000 did not even hint that Liberty Mutual might be accountable for underpayments on the Wausau policies, claims against which had been adjusted as long as 15 years earlier under a distinct system. Any effort to recover on account of these policies is a distinct claim for relief ("cause of action" in the state's parlance). And as we intimated in *Knudsen I* and *Schorsch*, and now hold, a novel claim tacked on to an existing case commences new litigation for purposes of the Class Action Fairness Act.

The conduct of plaintiffs and the state judge in this litigation, turning an arguable error in discovery into a sprawling proceeding in which Liberty Mutual will be required to pay on account of other insurers' decisions taken long ago under different rules for calculating proper payment, and without any opportunity to defend itself on the merits or even insist that the policies' actual terms be honored, illustrates why Congress enacted the Class Action Fairness Act. The stakes exceed $5 million; more than two-thirds of the class members live outside Illinois; minimal diversity is established. See 28 U.S.C. §1332(d), §1453(b) (as amended by the 2005 Act). The addition of new claims after February 18 means that litigation has been commenced within the Act's coverage period.

We grant the petition for leave to appeal. The decision of the district court is vacated, and that court must revoke the remand and decide this litigation on the merits. The Class Action Fairness Act provides for federal resolution of the plaintiffs' claims, so the district court need not (and should not) give any weight to the state judge's order of default and the scope of the class certification. These and all other

questions are open to independent resolution in the federal forum.

A true Copy:

     Teste:

                                _____

                                *Clerk of the United States Court of Appeals for the Seventh Circuit*