Stephen R. STEINBERG, individually and on behalf of all others similarly situated, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.

No. 2:05–CV–03340(ADS)(ARL).

United States District Court, E.D. New York.

March 7, 2006.

Pomerantz Haudek Block & Grossman, New York City (D. Brian Hufford, Robert J. Axelrod, Stanley M. Grossman, and Susan Jessica Weiswasser, of Counsel), for the Plaintiff.

Nelson, Levine, DeLuca & Horst, Bluebell, Pa (Michael R. Nelson, of Counsel), for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This class action was originally brought by Stephen R. Steinberg ("Steinberg" or the "Plaintiff"), on behalf of himself and the putative class, against Nationwide Mutual Insurance Company ("Nationwide" or the "Defendant"), seeking a class certification, an injunction, compensatory damages, and attorney's fees. The case arises out of an alleged breach of Nationwide's contractual obligations under insurance policies it issued. Presently before the court is a motion by Nationwide to dismiss the Plaintiff's complaint for lack of subject matter jurisdiction, or, in the alternative, to abstain from exercising jurisdiction until the resolution of a parallel state action. In addition, both parties have filed motions for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

## I. BACKGROUND

### A. Factual Background

This action arises out of an automobile insurance contract Nationwide sold Steinberg for his leased 1999 BMW 740i. In September 1999, Steinberg's BMW engine was damaged by water that entered the engine and caused a "hydraulic lock." On behalf of Nationwide, an adjuster consented to the replacement of the engine and agreed to pay the repairing dealer an unspecified amount for the replacement engine and related work that was made necessary by the loss. The dealer repaired the automobile and Nationwide tendered a check to the plaintiff. However, the check did not reflect the sum that the dealer, Nationwide's adjuster, and the plaintiff had agreed upon. Nationwide had subtracted from that agreed-upon sum the deductible, which is provided for in the insurance contract and varies among insureds. Nationwide also deducted a "betterment charge" deduction of $563.17. The term "betterment charge" is not contained in the automobile insurance contract between Nationwide and Steinberg.

In the complaint, Steinberg alleges that the deduction by Nationwide of the "betterment charge" constitutes a breach of the insurance contract between him and Nationwide because, under the contract, the only amount an insured must pay is the deductible. Steinberg further alleges that the term "deductible" as defined in the insurance contract does not reflect a "betterment charge." Steinberg also contends that Nationwide has breached the contract by applying the "betterment charge" to the loss of parts, such as the engine in this case.

The complaint further alleges that, since on or about January 1, 1993, Nationwide has entered into automobile insurance contracts that are substantially similar to the contract described above with "millions" of people in every state except Hawaii, Massachusetts, and New Jersey. Steinberg seeks to maintain a class action on behalf of all individuals who entered into automobile insurance contracts with Nationwide and have had, since January 1, 1993, a collision or comprehensive loss (1) for which Nationwide paid the amount neces-

sary for repair minus the deductible and a "betterment charge"; or (2) that involved a vehicle that was repaired at a Blue Ribbon Repair Shop where the insured paid a deductible and a "betterment charge."

## B. Procedural History

The Plaintiff commenced a class action against Nationwide nearly identical to the instant action on October 13, 1999, in the Supreme Court of the State of New York, Suffolk County. On November 24, 1999, Nationwide removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. On December 9, 1999, Steinberg moved to remand the action to the state court on the ground that this Court lacked subject matter jurisdiction. In particular, the plaintiff argued that the amount in controversy did not exceed $75,000 as required by 28 U.S.C. § 1332(a).

On April 6, 2000, this Court denied Steinberg's motion to remand. *Steinberg v. Nationwide,* 91 F.Supp.2d 540 (E.D.N.Y.2000). The Court held that, although it "[would] not aggregate the potential value of the class in order to sustain the $75,000 jurisdictional amount," the injunctive relief sought by the plaintiff furnishes the basis for federal jurisdiction. *Id.* at 543–44. The Court found that, with reasonable certainty, the imposition of an injunction prohibiting the practice of recognizing "betterment charges" would cause economic harm to Nationwide in excess of $75,000. *Id.* at 544. Accordingly, the Court concluded that the plaintiffs request for injunctive relief met the jurisdictional minimum of $75,000. *Id.*

On September 12, 2001, Steinberg moved for permission to file a Second Amended Complaint in order to narrow the claims in the complaint. In particular, Steinberg sought to withdraw a claim that the defendant's use of used, reconditioned, or remanufactured parts when repairing a car is also a breach of contract. On September 19, 2001, Nationwide stated that it did not oppose the plaintiffs' motion. In an order dated September 22, 2001, the Court granted the plaintiffs' motion to file a Second Amended Complaint. Steinberg filed the Second Amended Class Action Complaint on September 26, 2001.

On October 5, 2001, Nationwide moved to dismiss the Second Amended Complaint on the ground that this Court lacked subject matter jurisdiction. In this motion, Nationwide stated that Steinberg's Second Amended Complaint did not request the injunctive relief that this Court previously held satisfied the amount in controversy element of diversity jurisdiction. Because the amount in controversy exclusive of the injunctive relief sought did not exceed $75,000, Nationwide asserted that the Court must dismiss the complaint for lack of subject matter jurisdiction. Steinberg conceded that the request for injunctive relief was missing from his Second Amended Complaint and explained that he had inadvertently deleted the request. On October 24, 2001, Steinberg requested permission to supplement the pleading pursuant to Fed.R.Civ.P. 15(a) so as to cure the jurisdictional defect and include the request for injunctive relief.

On July 27, 2002, the Court granted Nationwide's motion to dismiss the Second Amended Complaint for lack of subject matter jurisdiction. The Court also granted Steinberg's motion to file an amended complaint to include a request for injunctive relief, which would cure the jurisdictional defect. On August 7, 2002, Steinberg filed the Third Amended Class Action Complaint. In an order dated September 4, 2004, the Court granted Steinberg's motion for class certification pursuant to Fed. R.Civ.P. 23, certifying a national class of all Nationwide policyholders who had been injured by Nationwide's imposition of a "betterment charge," again on the basis

that the Plaintiff's request for injunctive relief would satisfy the $75,000 jurisdictional minimum.

Following this Court's certification of the class action, Nationwide filed a petition under Fed.R.Civ.P. 23(f) for leave to appeal the order as to class certification to the Second Circuit. The Second Circuit elected not to hear the appeal. Instead, on December 30, 2004, it ruled, sua sponte, that there was no federal subject matter jurisdiction given that Plaintiff had damages of less than $75,000 and that the value of injunctive relief should not be considered in determining whether the monetary limit had been reached. *Steinberg v. Nationwide Mutual Ins. Co.*, No. 04–8018–cv (2d Cir. Dec. 30, 2004). On March 16, 2005, following the Second Circuit's instructions, this Court remanded the case to the state court and dismissed the pending federal case. At the present time, that action ("Steinberg I") remains pending in New York Supreme Court.

On July 15, 2005, the Plaintiff filed the instant action, which is parallel to the pending state court action in form and in substance, in that it is based on the same transactions and occurrences; alleges identical claims; and seeks identical relief. However, Steinberg asserts that in this action, contrary to the original case for which there was no federal court jurisdiction, the new case was properly filed in federal court pursuant to the Class Action Fairness Act of 2005, Pub.L. No. 109–2, 119 Stat. 4 ("CAFA"). CAFA eliminates the general rule of non-aggregation for purposes of determining the amount in controversy. 28 U.S.C. § 1332(d). CAFA provides that federal courts will have jurisdiction over any proposed class action commenced after February 18, 2005 in which, as here, less than one-third of the putative class members reside in a particular state and the aggregate amount in controversy exceeds $5,000,000. *Id. See* Compl., ¶ 5.

On August 18, 2005, Nationwide filed the instant motion to dismiss the Plaintiff's complaint. Nationwide asserts several grounds in support of its motion to dismiss: (1) the action should be dismissed for lack of subject matter jurisdiction due to the commencement of Steinberg I prior to the enactment of CAFA; (2) the action should be dismissed under the theory of impermissible claim splitting; and (3) if the Court does not dismiss the case, the action should be stayed pursuant to the abstention doctrine in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

## II. DISCUSSION

### A. The Commencement Issue

The Court will begin its analysis with the issue of subject matter jurisdiction. "The first question necessarily is that of jurisdiction." *Ex parte McCardle*, 74 U.S. 506, 512, 7 Wall. 506, 19 L.Ed. 264 (1868). The district courts are "courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). In this case, Steinberg invokes the Court's diversity jurisdiction under the newly enacted provisions of CAFA. 28 U.S.C. § 1332(d).

CAFA expanded federal diversity jurisdiction over state-based class actions. Enacted on February 18, 2005, the purpose of the "Class Action Fairness Act," 109 P.L. 2, was to amend the "procedures that apply to consideration of interstate class actions to assure fairer outcomes for class member and defendants." *Id.* Specifically, CAFA vested federal district courts with diversity jurisdiction over class actions where, among other things, there is minimal diversity, the proposed class contains at least 100 members, and the amount in

controversy is at least $5 million in the aggregate. 28 U.S.C. § 1332(d). The statute further contains a removal provision that allows for any such case filed as a class action in state court to be removed to federal court. CAFA also eliminates the general rule of non-aggregation for purposes of determining the amount in controversy. However, CAFA applies only to actions "commenced on or after the date of enactment," which means that it applies only to suits filed on or after February 18, 2005. Pub.L. 109–2, § 9.

Nationwide asserts that, for all intents and purposes, this action was technically "commenced," for purposes of CAFA, on October 13, 1999, the date that Steinberg I was first filed. According to Nationwide, under this reasoning, CAFA's jurisdictional conferring provision does not apply, and the Court lacks subject matter jurisdiction over this case. Accordingly, the issue for this Court to determine is when the case at issue was "commenced." Was it "commenced" at the time the first lawsuit was filed on October 13, 1999, or when this complaint was filed on July 15, 2005?

■ This issue of when an action is "commenced" under CAFA has been the subject of recent litigation at the federal district court level. Also, the Seventh, Eighth, Ninth, and Tenth Circuits have had the opportunity to consider the CAFA commencement issue. These decisions have addressed two basic issues: first, whether a case is "commenced" by its removal to federal court, and second, whether certain amendments to a pre-existing action may constitute "commencement" of an action for purposes of CAFA. These courts have acknowledged that certain actions taken in previously pending cases could be significant enough to constitute the commencement of an action. Although the particular issue involved in this case has not yet been addressed at any level in any circuit, an analysis of the cases that have been decided under CAFA sheds light on the particular issue in this case.

Courts have uniformly rejected the theory that filing a notice of removal post–CAFA commences an action for the purpose of triggering the provisions of CAFA. See Bush v. Cheaptickets, Inc., 425 F.3d 683, 685 (9th Cir.2005); Pritchett v. Office Depot, 404 F.3d 1232 (10th Cir.2005); Natale v. Pfizer, Inc., 379 F.Supp.2d 161 (D.Mass.2005). For example, in Pritchett v. Office Depot, Inc., the Tenth Circuit addressed the issue of whether a civil action was commenced on the state court filing date or the federal court removal date, which occurred after the enactment of CAFA. The court rejected the argument that filing a notice of removal commences a new action and triggers CAFA. 404 F.3d at 1235. In analyzing the issue, the Pritchett court "considered, among other things, the traditional trend of narrowly construing removal statutes [to avoid expanding the statute beyond the bounds intended by Congress,] ... general tenets of statutory construction, as well as the meaning of the word 'commenced,' the Act's legislative history, and legal precedent." Id. The court began its analysis by stating that "a lawsuit is commenced at a discrete moment in time: the filing of the original complaint in a court of competent jurisdiction." Id. Taking into account CAFA's legislative history, the court concluded that Congress did not intend CAFA to have a retroactive effect. Id. at 1235–36; accord Lott v. Pfizer, Inc., No. MJG–84–1911, 2005 U.S. Dist. LEXIS 16291, *6 (D.Md. Aug. 12, 2005) ("Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively."). The Tenth Circuit held that the filing of the action in state court, and not the subsequent filing of the notice of removal in federal court, "commenced"

the action for purposes of CAFA. *Id.* at 1240.

Of note to this case, the *Pritchett* court recognized that the original version of CAFA passed by the House of Representatives would have applied to any action in which a class certification order was entered after the enactment, even if the action was commenced prior to the enactment of CAFA. 404 F.3d at 1236; *see also* H.R. 516, 109th Cong. § 7 (2005). However, Congress eliminated this language from the final form, which "signaled an intent to narrow the removal provisions of the Act to exclude currently pending suits." *Pritchett,* 404 F.3d at 1236. The court viewed two statements made by sponsoring legislators contained in the Congressional Record as further indicating that CAFA "was not designed to apply to currently pending lawsuits." *Id.; see also* 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal."). The *Pritchett* court found that the legislative history of the act and public policy supported its determination that the filing a notice of removal does not commence a new action under CAFA.

Although parties have been unsuccessful in arguing that pending cases are "commenced" when they are removed to federal court, some courts have determined that certain amendments to complaints could cause a pre-CAFA case to fall within CAFA's sphere. *See Knudsen v. Liberty Mutual Ins. Co.,* 435 F.3d 755 (7th Cir. 2006). *But see Plubell v. Merck & Co.,* 434 F.3d 1070 (8th Cir.2006) (holding that amended pleading did not "commence" a new action for the purposes of CAFA because the claims were exactly the same in both pleadings and the replacement representative was a member of the putative class in the original pleading).

In *Knudsen v. Liberty Mutual Ins. Co.,* 435 F.3d 755 (7th Cir.2006), the Seventh Circuit held that the assertion of new claims against a class action defendant that did not relate back to the original petition commenced a new cause of action under CAFA. The case began in Illinois state court in March, 2000, asserting claims based on the methods used by Liberty Mutual Insurance Company to calculate reimbursement of medical expenses. *Id.* Five years later on February 25, 2005, closely after the enactment of CAFA, the plaintiffs sought to expand the class by amending the complaint to include the insureds of Liberty Mutual Fire Insurance Company, which was not a named defendant. *Knudsen,* 411 F.3d 805, 807 (7th Cir.2005). In response, Liberty Mutual Insurance Company contended that the proposed amendment to the class definition effectively commenced a new suit and was thus removable under CAFA. *Id.* at 806.

On June 7, 2005, the Seventh Circuit Court of Appeals ruled that the amendment did not commence a new suit, because Liberty Mutual Insurance Company remained the only defendant and no new claims or parties were added. *Id.; see also Pritchett,* 404 F.3d at 1236 ("Congress signaled an intent to narrow the removal provisions of the Act to exclude currently pending suits."). However, on September 29, 2005, the state court certified amendments to the class that added claims involving all affiliates and subsidiaries of Liberty Mutual Insurance Company that were not based on the same underlying

acts as the claims in the original complaint. *Knudsen,* 435 F.3d at 755. Finding that the original complaint did not give Liberty Mutual notice that the plaintiffs contested any decisions made by its affiliates and subsidiaries, the court held that with the addition of these substantial new claims after February 18, 2005 the litigation "commenced" within CAFA's coverage period. *Id.* at *7–8;

In a two-case opinion, the Seventh Circuit recently declared that the addition of plaintiffs related back to the original pre-CAFA filing, and therefore, these amendments did not commence new actions under CAFA. *See Phillips v. Ford Motor Co.,* 435 F.3d 785 (7th Cir.2006); *Boxdorfer v. DaimlerChrysler Corp.,* 2006 U.S.App. LEXIS 2233, No. 05–8032 (7th Cir.2006). The court began by framing the issue in both cases as whether amending a complaint to add or substitute named plaintiffs "commences" a new suit. *Id.* The court stated that "a routine amendment to the complaint does not commence a new suit." *Id., quoting Schorsch v. Hewlett–Packard, Co.,* 417 F.3d 748, 749 (7th Cir.2005). The court then turned to state law regarding the relation-back doctrine and determined that both sets of amendments related back to their original pre-CAFA complaints. Therefore, it ruled that adding new named plaintiffs to each class failed to "commence" new actions within the provisions of CAFA.

On the other hand, at least one court has held that an action is considered "commenced" when a newly named plaintiff is added to the case and asserts unique claims. *See Heaphy v. State Farm Auto. Ins. Co.,* No. C05–5404RBL, 2005 WL 2573340, **1–2, 2005 U.S. Dist. LEXIS 25650, at *3–5 (W.D.Wash. Oct. 12, 2005). In *Heaphy,* after motions for class certification and on the merits of the lead plaintiff's claims were denied, the plaintiff filed an amended complaint naming a new lead

plaintiff who was not a member of the prior putative class. *Id.,* 2005 WL 2573340, at *4. New causes of action were also asserted. The district court held that the amended pleading was "sufficiently independent of the original contentions that it must be treated as fresh litigation." *Heaphy v. State Farm Mut. Auto. Ins. Co.,* 2005 WL 1950244, *5 (W.D.Wash. 2005).

Although instructive, these cases all involve either removal to federal court of an action filed in state court prior to the enactment of CAFA, or amendments to actions filed in state court pre-CAFA. While they provide insight into the "commencement" issue, they are not entirely relevant to the issue presented here where the Plaintiff has filed a new federal complaint in this Court. Indeed, Nationwide concedes that the present complaint was filed in federal court after the enactment of CAFA. Nationwide argues, however, that this action concerns the same parties, claims, and relief at issue in Steinberg I, so that the action "must be deemed to have commenced on the date Steinberg I was first filed in state court." Nationwide asserts that any other interpretation of CAFA would contravene the clear and unambiguous statutory language establishing CAFA as prospective in effect. Nationwide also contends that if the re-filing of pending state court cases in federal court was sufficient to invoke federal subject matter jurisdiction under CAFA, countless class actions initiated in the months and years prior to the enactment of CAFA could suddenly be introduced into the federal court system.

A similar issue was encountered in *Price v. Berkeley Premium Nutraceuticals, Inc.* No. 05–73169, 2005 WL 2649205 (E.D.Mich. Oct.17, 2005). In that case, the plaintiffs filed a class action suit in Michigan state court in 2004, claiming that

the defendants misrepresented the efficacy of their products and engaged in unauthorized billing. *Id.*, at *1. The defendants timely removed the case to federal court based on case law that was subsequently overturned. *Id.*, at *2. Apparently becoming unhappy with the federal litigation arena, the defendant sought a remand to state court. *Id.* Instead of opposing removal, the plaintiffs voluntarily dismissed their case on April 8, 2005, based on their belief that the recently enacted CAFA would provide them with federal jurisdiction in a renewed action. The next day, on April 9, 2005, the plaintiffs filed a new complaint containing virtually all of the same factual allegations as the complaint in the prior dismissed case, and asserting diversity jurisdiction under CAFA. *Id.* at *4. In moving to dismiss the second action, the defendant Berkeley asserted identical arguments to the ones raised by Nationwide in the instant case, namely that the plaintiffs newly filed action should be deemed commenced when the plaintiffs filed the first case in state court in 2004. *Id.* The court rejected this argument, stating that the date of the new complaint must control, particularly under the circumstances "where the original case should not have been in federal court in the first place." *Id.*

The court finds the reasoning in *Price* to be persuasive. Under Rule 3 of the Federal Rules of Civil Procedure, "A civil action is commenced by filing a complaint with the court." *Id.* Here, the Plaintiff properly "commenced" a new and independent action on July 15, 2005. The Court finds no compelling reason under CAFA, or any other federal law, to dismiss the Plaintiff's action solely based on the similar action pending in state court. The mere fact that the plaintiffs have a similar suit pending in state court may be grounds, based on principles of comity, for this Court to refrain from proceeding or to dismiss the action based on the doctrine of abstention, but it is not a separate ground for dismissal, either under CAFA or for lack of subject matter jurisdiction. The court therefore finds that, for the purposes of CAFA, the present suit was "commenced" on July 15, 2005, and this court has diversity jurisdiction over the action under 28 U.S.C. § 1332(d)(2).

In this regard, the Court finds instructive the ruling in *Commerce Oil Refining Corp. v. Miner*, 303 F.2d 125, 127 (1st Cir.1962), in which the parties requested the federal district court to either stay its case in favor of a parallel state case or enjoin that state case from proceeding. On appeal, the First Circuit vacated the district court's issuance of an injunction, and explained the unique relationship between two distinct and sovereign courts:

> Commonly two purely in personam suits between the same parties for the same cause of action may not be maintained in the same jurisdiction. But this does not apply when they are in different courts. In such case, absent principles of comity, whether both suits shall be permitted to proceed may depend upon equitable or other considerations. But it is clear in such a situation that neither court impinges upon the sovereign jurisdiction of the other even though the one that first reaches a final judgment on the merits will determine the outcome in the other by virtue of principles of res judicata. Hence, where comity exists, as between federal and state courts, this is the classic situation where intervention is unnecessary. The mere burden on a party of being 'subjected to litigation in other courts' is precisely what comity requires the federal court to disregard as a ground for intervention.

*Id.* (citations omitted).

With the principle of separate jurisdictional sovereignty and comity in mind, the Court finds that the existence of a parallel

state action is not a ground to dismiss the Plaintiff's suit, which was properly commenced under CAFA. As in *Price,* the real issue is whether the case should be stayed under the principles of comity due to the parallel proceeding in the New York State Supreme Court. *See Associated Dry Goods Corp. v. Towers Financial Corp.,* 920 F.2d 1121, 1126 (2d Cir.1990). Accordingly, the Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

### B. As to Claim Splitting

 Nationwide characterizes the Plaintiffs' complaint in this case as impermissible claim splitting because it is nearly identical to the complaint in the pending state court action. The argument misinterprets the rule against claim splitting. The rule "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Coleman v. B.G. Sulzle, Inc.,* 402 F.Supp.2d 403 (N.D.N.Y.2005). However, claim splitting does not apply to parallel state and federal actions. Courts have consistently declared that "[w]here there is concurrent jurisdiction, however, it is permissible for a plaintiff to file parallel state and federal actions simultaneously." *Rutledge v. Arizona Board of Regents,* 859 F.2d 732, 736 (9th Cir.1988), *quoting Attwood v. Mendocino Coast Dist. Hospital,* 886 F.2d 241, 245 (9th Cir.1989). Rather, the claim splitting doctrine applies to an attempt to "maintain two actions on the same subject in the same court, against the same defendant at the same time." *Coleman,* 402 F.Supp.2d at 403. Accordingly, the proper question in a case involving parallel state and federal actions is whether abstention under *Colorado River* is appropriate.

### C. As to Abstention

The Supreme Court has repeatedly stated that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Exxon Mobile Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 1526–27, 161 L.Ed.2d 454 (2005); *Doran v. Salem, Inc.,* 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910). However, abstention doctrines may "in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Exxon Mobile Corp.,* 544 U.S. 280, 125 S.Ct. at 1526–27; *see, e.g., Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

In *Colorado River,* the Supreme Court held that in "exceptional" circumstances, a federal district court may stay or dismiss an action solely because of the pendency of similar litigation in state court, given fundamental principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817,96 S.Ct. 1236, 47 L.Ed.2d 483; *see Sheerbonnet Ltd. v. American Express Bank Ltd.,* 17 F.3d 46 (2d Cir.1994); *Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 603 (2d Cir.1989). "Before the Colorado River doctrine can be applied, the court must first determine that the concurrent state and federal actions are actually parallel." *Price,* 2005 WL 2649205, at *5; *see also Crawley v. Hamilton County Comm'rs,* 744 F.2d 28 (6th Cir.1984); *Bernstein,* 850 F.Supp. at 182.

 In this case, as discussed above, it is clear that the state and federal complaints are nearly identical. Moreover,

both parties have identified the actions as "parallel actions" throughout their motion papers. Having found that the actions are parallel, the Court must carefully balance several factors in order to determine whether to abstain in this case. The relevant factors to be considered in determining whether federal abstention is appropriate in light of parallel state litigation include the following: "(1) assumption by federal or state court of jurisdiction over any *res* or property; (2) whether the federal forum is any less convenient to the parties than the state forum; (3) whether there is danger of piecemeal litigation; (4) the order of the two suits; (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court is inadequate to protect the plaintiff's rights." *Bernstein v. Hosiery Mfg. Co. of Morganton, Inc.*, 850 F.Supp. 176, 182 (E.D.N.Y.1994) (quoting *Moses A. Cone Memorial Hospital v. Mercury Constitution. Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see also Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985). Courts may also consider "the vexatious and reactive nature of either the federal or state litigation" as part of its analysis. *Bernstein*, 850 F.Supp. at 185.

■ The "burden of persuasion rest[s] on the party opposing the exercise of federal jurisdiction." *Arkwright–Boston*, 762 F.2d at 210. And "[o]nly the clearest of justifications, constituting 'exceptional' circumstances, will warrant . . ." *Colorado River* abstention. *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236; *see Alliance of American Insurers*, 854 F.2d at 603; *Sheerbonnet*, 17 F.3d at 49.

■ Applying the factors to the facts of this case, the Court finds that the first two factors plainly support retaining federal jurisdiction. Clearly, there is no property as issue in this matter, and both the federal and state courthouses are equally convenient to the parties.

As to the order in which jurisdiction was obtained, the state case was filed in 1999, nearly six years before this federal case. However, with the exception of the filing of the complaint, the parties have stated that the state case is apparently inactive. Nationwide asserts that the state proceedings have been underway for some time and have involved considerable discovery and motion practice. However, the Court notes that the significant motion practice and discovery occurred while the case was pending in federal court. The Court also notes that it was Nationwide who first invoked federal jurisdiction when it removed the action from state to federal court only one month after the Plaintiff filed the state court complaint in 1999. The case remained in federal court for nearly five years, until it was remanded to state court on March 16, 2005. The factor regarding order of jurisdiction, therefore, does not weigh very heavily in favor of abstention.

As to the source of the governing law, the thrust of the complaint is based on state contract law. However, while a decision on the merits will not turn on federal law, it is significant that Congress enacted CAFA with the purpose of expanding federal court jurisdiction over national class actions such as this one. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp*, in analyzing this factor, the Supreme Court stated that the "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exists 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." 460 U.S. 1, 25–26, 103 S.Ct. 927, 74 L.Ed.2d 765

(1983). As noted in *Arkwright–Boston,* because "all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction." 762 F.2d at 211; *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325 (2d Cir.1986). In *Bethlehem,* the Second Circuit reasoned that where the case presents "no novel or unique issues of [state] law" that there exists no "exceptional" circumstances weighing in favor or surrender of federal jurisdiction. 800 F.2d at 328.

As to the adequacy of the state court to protect the Plaintiffs' rights, it is again noted that CAFA was enacted specifically to bring this type of national class action within the purview of federal court jurisdiction. Congress has concluded that the federal court is the "appropriate forum" for such cases because it is better suited to handle nationwide issues. 109 S. Rpt. 14 (Feb. 28, 2005), at 5. In *Bethlehem,* the Second Circuit held that "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action." 800 F.2d at 328. The fact that Steinberg I was initially brought in New York state court, and that Steinberg is entitled to pursue all of the claims brought in this action in state court, does not weigh in favor of abstention because under prevailing precedent, such facts do not rise to the level of "exceptional" circumstances.

Finally, when a federal action concerns the same parties, claims, and relief as a parallel state action, the danger of piecemeal litigation may warrant federal abstention by raising the risk of "inconsistent and mutually contradictory determinations." *Bernstein,* 850 F.Supp. at 184–85. In *Bernstein,* the court explained that this factor supported abstention since "the state court proceedings [had] been underway for quite some time, and [had] in-

volved considerable discovery and motion practice." *Id.* The court found that there were at least two other pending parallel state proceedings in which the plaintiff and defendant were parties. In *Arkwright–Boston,* the court abstained under *Colorado River* because it involved "over forty state cases that were further along the path to resolution than the three federal cases." 762 F.2d at 211.

The Court finds the rationale in *Bernstein* and *Arkwright–Boston* to be distinguishable. Unlike the instant case, those cases involved more than two parallel actions involving the same two parties. Here, there is only one pending state action. Allowing both actions to proceed will not "force [the] defendants to defend this complex litigation on two fronts," nor will it create the risk of "inconsistent disposition of these claims between two concurrent forums." *Arkwright–Boston,* 762 F.2d. at 211. Moreover, with regard to the danger of "inconsistent and mutually contradictory determinations …," *Bernstein,* 850 F.Supp. at 184–85, the Court finds noteworthy the Plaintiff's statement in this case that, if this Court denies the current motion, he will stay the state court action pending the resolution of this case.

In weighing the *Colorado River* factors, the Court finds that there exists no "exceptional" circumstances that warrant the Court's dismissal of this case under *Colorado River.* The Defendant's motion to abstain is therefore denied.

### D. As to the Motions for Sanctions

Both parties have filed motions for sanctions under Rule 11. Nationwide's motion seeks sanctions claiming that the Plaintiff filed a complaint that is unsupported by the law. In response, Steinberg also moves for sanctions against Nationwide— for filing the motion for sanctions—arguing that the request for sanctions is frivo-

lous and presented to harass, delay, and increase the cost of litigation.

■ Rule 11 authorizes a court to impose sanctions against attorneys and parties for filing paper that are presented for an "improper purpose," or contain unsupported legal and factual allegations, claims, defenses, and denials. Even if sanctions are warranted under the Rule, the decision whether to impose sanctions is not mandatory, but is a matter for the court's discretion. *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir.2004).

Nationwide's motion for sanctions claims that the Plaintiff's complaint is frivolous, relying primarily on the arguments in its motion to dismiss, which, as set forth above, the Court has denied in its entirety. Accordingly, the Court finds nothing "improper" about the Plaintiff's complaint under Rule 11.

On the other hand, Steinberg's motion seeking sanctions for Nationwide's request for sanctions has more merit. In contrast to the Plaintiff's complaint, Nationwide's motion for sanctions is more akin to the types of filings that this Court would be inclined to characterize as improper under Rule 11. Initially, the Court notes that Nationwide's motion for sanctions contains a footnote, which is strictly prohibited under the Court's Individual Rule IV.B.(I). In addition, Nationwide's motion for sanctions, as well as its motion to dismiss, ignores recent Supreme Court precedent explaining that "[t]here is nothing necessarily inappropriate ... about filing a [federal] action ..." while a state court action is pending. *Exxon Mobil Corp.,* 544 U.S. 280, 125 S.Ct. at 1528, n. 9, 161 L.Ed.2d 454. However, even if the Court were to find that Nationwide's motion for sanctions was improper, at this time the Court declines to impose any sanctions in this case.

### *III. CONCLUSION*

Based on the foregoing, it is hereby

**ORDERED,** that the motion by Nationwide to dismiss the Plaintiff's complaint for lack of subject matter jurisdiction, or, in the alternative, to abstain from exercising jurisdiction until the resolution of a parallel state action is DENIED; and it is further

**ORDERED,** that the motions by both parties for sanctions are DENIED in their entirety; and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge Arlene R. Lindsay to set a schedule for discovery.

**SO ORDERED.**