**Shawn MONIZ, individually and on behalf of himself and all others similarly situated, Plaintiff,**

v.

**BAYER A.G. et al., Defendants.**

**Civil Action No. 06–10259–NMG.**

United States District Court, D. Massachusetts.

Aug. 14, 2006.

Kenneth G. Gilman, Gilman and Pastor, LLP, Boston, MA, for Plaintiff.

Benjamin G. Bradshaw, O'Melveny & Meyers LLP, NW Washington, DC, Caryn L. Daum, Lee M. Holland, John W. Steinmetz, Robinson & Cole LLP, John D. Hanify, Jeffrey J. Upton, Hanify & King Professional Corporation, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

On February 10, 2005, plaintiff Shawn Moniz ("Moniz"), individually and on behalf of himself and others similarly situated, filed a class action lawsuit in Middlesex Superior Court against defendants Bayer A.G. and Bayer Corporation ("Bayer"), Crompton Corporation ("Crompton") and Uniroyal Chemical Company, Inc. ("Uniroyal")(collectively "the defendants").[1] Defendants removed to this Court on February 10, 2006. Plaintiff now moves this Court to remand the case.

## I. *Background*

The class action filed by Moniz arises from defendants' alleged conspiracy from approximately 1994 through 2004 to fix the price of certain rubber and urethane products. Plaintiff and the other members of the putative class are indirect purchasers of those products. Both Crompton and

---

1. The original complaint named six defendants. By the time of the Second Amended Complaint, filed on February 6, 2006, only the above-named defendants remained. Furthermore, throughout the submitted materials, Crompton Corporation is also referred to as "Chemtura Corporation".

Bayer have already pled guilty and paid criminal fines following prosecution by the United States Department of Justice ("DOJ"). This action is for equitable relief for the injuries sustained by Moniz and the class that were allegedly caused by the defendants. Plaintiff estimates the class to consist of tens of thousands of persons.

On May 11, 2005, Moniz filed a First Amended Class Action Complaint ("First Amended Complaint") with the Middlesex Superior Court. On February 1, 2006, Plaintiff filed an assented-to motion for leave to file a Second Amended Class Action Complaint ("Second Amended Complaint") with the state court. That motion was allowed on February 6, 2006, and the Second Amended Complaint was filed on that same day.[2]

The Second Amended Complaint alleges the same conspiracy to fix prices as the original complaint. The most recent version of the complaint consists, however, of three substantive changes from prior versions of the complaint: 1) it adds a claim under Chapter 93A (the Massachusetts Consumer Protection Act), 2) it expands the kind of damages for which plaintiff seeks redress and 3) it includes a claim for relief related to an additional product (Neoprene). Plaintiff's complaint insists that no member of the class wants, nor will accept, an award in excess of $74,999 and that the suit is intentionally brought only under Massachusetts state law.

On February 10, 2006, the defendants removed the case to this Court, arguing that the Second Amended Complaint makes the case removable under the recently enacted Class Action Fairness Act, Pub.L. No. 109–2, 119 Stat. 4 (2005)("CAFA"). Defendants argue that they have satisfied the procedural require-ments for removal and that this Court has subject-matter jurisdiction over the case.

On March 6, 2006, pursuant to 28 U.S.C. § 1447, plaintiff filed a motion to remand the case to the Massachusetts Superior Court for Middlesex County, which defendants oppose. On April 18, 2006, defendants filed a joint motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted and failure to plead fraudulent concealment with particularity. Until this Court resolves the pending motion to remand, the case is in a state of suspension. Thus, having reviewed the memoranda and heard oral argument in support of and opposition to the pending motion to remand, the Court resolves it as follows.

## II. *Plaintiff's Motion to Remand*

### A. Legal Standard

■ "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The First Circuit Court of Appeals has held that the removal statute is to be strictly construed and defendants have the burden of demonstrating the existence of federal jurisdiction. *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.1999).

Defendants contend that CAFA specifically altered the burden of proof in removed cases and made it incumbent on the plaintiff to demonstrate that remand is warranted. They point to the Senate Report accompanying CAFA which states that "it is the intent of the Committee that the named plaintiff(s) should bear the bur-

---

2. In addition to the present defendants, plaintiff's original complaint named Flexsys N.V., Flexsys America L.P., Dow Chemical Compa-ny and BASF A.G. as defendants but all had been dropped as defendants by the time of the filing of the Second Amended Complaint.

den of demonstrating that a case should be remanded to state court." S.Rep. No. 109–14, at 43. Defendants also cite *Natale v. Pfizer, Inc.,* 379 F.Supp.2d 161 (D.Mass. 2005), in which another session of this Court held that, under CAFA, "the burden of removal is on the party opposing removal to prove that remand is appropriate." *Id.* at 168 (citing *Berry v. American Express Publ'g Corp.,* 381 F.Supp.2d 1118, 1122–23 (C.D.Cal.2005)).

This argument of the defendants' is unpersuasive. First, the clear majority of courts that have addressed the issue have held that, even where CAFA applies, the burden of proof on a motion to remand remains with the removing party because the text of the statute says nothing about changing that long-standing rule. *See, e.g., Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 448 (7th Cir.2005)("The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a statute [to that effect]. A declaration by 13 Senators will not serve."); *Werner v. KPMG LLP,* 415 F.Supp.2d 688, 695 (S.D.Tex. 2006)("The textual silence on the burden of proof, which contrasts with Congress's express provisions changing a number of aspects of removal practice ... under CAFA, leads this Court to join those holding that the party opposing remand continues to bear the burden of proving federal jurisdiction.").

Second, the *Berry* decision, upon which a session of this Court based its holding with respect to CAFA's burden of proof in *Natale,* was effectively overturned by the Ninth Circuit Court of Appeals in a decision in April, 2006. See *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 686 (9th Cir.2006)("We join [the Seventh Circuit] and hold that CAFA's silence, coupled with a sentence in a legislative committee re-

port untethered to any statutory language, does not alter the longstanding rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction."). Thus, defendants retain the burden of establishing this Court's jurisdiction.

## B. Legal Analysis

In support of the motion to remand, Moniz argues that CAFA applies only to cases commenced on or after February 18, 2005, and because this action was filed eight days before that date, it doesn't apply here. The original complaint was, however, amended subsequent to February 18, 2005. Moniz contends that 1) numerous courts have held that the amendment of a complaint is not the equivalent of "commencing" a new action under CAFA and 2) the Second Amended Complaint makes only minor changes and relates back to the original complaint, thereby precluding any applicability of CAFA.

As a preliminary matter, plaintiff obfuscates the issue when he cites several district court decisions which have held that no amendment to a complaint could invoke CAFA because a civil action may be commenced only once. Almost every court that has reviewed cases similar to the one at bar has applied relation-back analysis in the context of CAFA commencement issues. *See, e.g., Schorsch v. Hewlett–Packard Co.,* 417 F.3d 748, 749 (7th Cir.2005). The cases cited by Moniz were all published by district courts located in the Eighth Circuit which has recently concluded that an amended pleading can commence a new action for purposes of CAFA if it does not relate back. *See Plubell v. Merck & Co.,* 434 F.3d 1070, 1071–72 (8th Cir.2006). This Court, as do the clear majority of courts that have faced similar CAFA commencement issues, will apply relation-back analysis to the facts of this case.

Defendants argue that plaintiff's Second Amended Complaint does not relate back to the original complaint and, therefore, constitutes a new action for the purposes of CAFA. Specifically, defendants argue that Moniz changed the claim in the Second Amended Complaint in several ways that effectively converted it into a "new" action under CAFA. Thus, for the purposes of resolving the motion to remand, the critical inquiry for this Court is whether the "amended pleadings so change the claims or parties as to be a new civil action, rather than a 'workaday change' that continues a pending action." *Werner,* 415 F.Supp.2d at 700.

■ While it remains an open question whether the relation-back analysis under CAFA should be conducted pursuant to state or federal law, *see id.* at 701, it ultimately makes little difference in this case because the language of Fed.R.Civ.P. 15(c)(2) mirrors the language of Massachusetts Rule of Civil Procedure 15(c). That rule states that an amended pleading relates back to an original complaint only if

> the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

Mass. R. Civ. P. 15(c). The Supreme Judicial Court has interpreted Massachusetts Rule 15(c) to mean that an original complaint must provide a defendant with sufficient notice of the misconduct alleged against it in the amended complaint in order for relation-back to be appropriate. *See Weber v. Cmty. Teamwork, Inc.,* 434 Mass. 761, 784–85, 752 N.E.2d 700 (2001)(stating that plaintiff's original complaint, which brought an unlawful termination claim, made "no mention of any retaliatory behavior or retaliation claim . . . and afforded the defendants no notice

that they would be required to defend a claim of retaliatory discrimination").

As noted earlier, plaintiff's Second Amended Complaint includes three substantive changes from prior versions of the complaint: 1) it adds a claim under Chapter 93A, 2) it expands the kind of damages for which plaintiff seeks redress and 3) it includes a claim for relief related to an additional product (Neoprene).

With respect to the claim under Chapter 93A, Massachusetts law has allowed new claims to relate back where the claims arose out of the same underlying transaction. *See Cimino v. Milford Keg, Inc.,* 385 Mass. 323, 333, 431 N.E.2d 920 (1982)(finding that plaintiff's new claim of emotional distress related back to the original complaint, which stated claims for wrongful death of his son and for his son's conscious pain and suffering, because it arose out of the same underlying transaction). Federal courts applying relation-back under CAFA have concurred. *See, e.g., Judy v. Pfizer,* 2005 WL 2240088, at *3 (E.D.Mo.2005). Plaintiff's new claim under Chapter 93A is not an independent claim asserting grounds for relief different in time and kind from the unjust enrichment claim in the original complaint and, therefore, it relates back. Moreover, plaintiff's modification of the damages he is seeking is minimal because 1) defendants' were on notice that plaintiff was seeking some form of damages and 2) the new damages sought arise from the same conduct, transaction or occurrence set forth in the original pleading.

Defendants have all but conceded that those changes relate back to plaintiff's original complaint. It is with respect to the third alteration that defendants concentrate their attention. They contend that plaintiff's new claims regarding Neoprene preclude the Second Amended Complaint from relating back to his original

complaint because 1) there was nothing in the original complaint (or even the First Amendment Complaint) that would have placed them on notice that they might be sued with respect to Neoprene and 2) plaintiff's new claims regarding Neoprene do not arise from his earlier allegations.

Perhaps recognizing that the addition of claims relating to Neoprene present the biggest obstacle in his argument supporting remand, Moniz first contends that the expansion of the class is a non-issue because defendants have reached a settlement of the price-fixing claims regarding Neoprene and two other products with a multistate class of indirect purchasers in the Circuit Court for Claiborne County, Tennessee. Plaintiff asserts that the Tennessee settlement will resolve all claims on behalf of indirect purchasers of Neoprene in Massachusetts and several other states, thus making that portion of his amendment a nullity.

█ Plaintiff's argument is ineffective. Whether a proceeding is removable is evaluated on the basis of the allegations in the complaint at the time of removal, not on the basis of what may occur at some point in the future. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939). Even if Moniz has now abandoned or resolved his Neoprene claims, it is irrelevant to CAFA's applicability to this proceeding. *See Dinkel v. General Motors Corp.*, 400 F.Supp.2d 289, 294 (D.Me.2005)(finding that federal jurisdiction over class action continues to exist under CAFA even after plaintiff voluntarily dismissed the only defendants capable of removing on the basis of CAFA).

The Court now turns to the merits of defendants' argument. Regarding notice, Neoprene is produced by the Bayer defendants only and thus the other defendants cannot be said to have had notice in the original complaint that they might be required to defend against claims involving that product at some point. Moreover, even Bayer had little notice from plaintiff's original complaint that it could be sued with respect to Neoprene. Perhaps Bayer should have been on notice that it was potentially vulnerable to price-fixing conspiracy claims involving Neoprene due to the fact that it is already defending against such claims in other courts. *See In re Polychloroprene Rubber Antitrust Litig.*, No. MDL–1642 (D.Conn.)(alleging a conspiracy to fix the price of polychloroprene rubber, a/k/a Neoprene, against several corporate defendants including Bayer). Nevertheless, plaintiff's original complaint gave insufficient notice because it explicitly defined "Defendants' Rubber and Urethane Products" but did not include Neoprene in that list. Defendants had every reason to believe that plaintiff's list was exhaustive and that Neoprene claims would not be part of this action.

Defendants also submit that Moniz's new claims relating to Neoprene do not arise from his earlier allegations. In his original complaint, Moniz alleged that defendants engaged in a conspiracy to fix the prices of Ethylene Propylene Diene Monomer Synthetic Rubber ("EPDM"), Acrylonitrile Butadiene Rubber ("NBR") and Urethanes. Neoprene is a synthetic rubber that is wholly distinguishable from EPDM, NBR or Urethanes. As defendants noted at oral argument on the motion to remand, the Neoprene claims involve a different and separate conspiracy from that alleged with respect to the other three products. Neoprene has separate uses, is handled by a separate corporate division and maintains a separate downstream market. Moreover, the defendants which do not manufacture Neoprene could not have joined a conspiracy with the Bay-

er defendants to fix its price.[3]

Plaintiff argues that the critical link between the Neoprene claims and the claims involving the other chemicals is that defendants are alleged to have engaged in price-fixing conspiracies with respect to each of them. Nevertheless, new claims arising out of *similar* alleged misconduct by the same defendants in a different context is not the equivalent of new claims arising out of the *same* alleged misconduct. Thus, plaintiff's argument that his new claims relating to Neoprene arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original complaint rings hollow.

In general, two kinds of amendments that constitute the commencement of a new action for purposes of CAFA are: 1) amendments that add new defendants and 2) amendments that assert a wholly distinct claim for relief into a pending suit. *Schorsch,* 417 F.3d at 749. *See also Knudsen v. Liberty Mut. Ins. Co.,* 411 F.3d 805, 807 (7th Cir.2005)(stating that "a new claim for relief ..., the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes")(*Knudsen I* ).

The second category of amendments is the primary focus here. The Seventh Circuit Court of Appeals, which has perhaps the most developed precedent with respect to the evolving jurisdictional issues arising from CAFA, has held that "a novel claim tacked on to an existing case commences new litigation for purposes of [CAFA]." *Knudsen v. Liberty Mut. Ins. Co.,* 435 F.3d 755, 758 (7th Cir.2006)(*Knudsen II* ).

Plaintiff contends that the new Neoprene claims do nothing more than modify the class definition and that such an amendment does not commence a new action under CAFA. Moniz cites to Schorsch in which the Seventh Circuit stated that "[a]mendments to class definitions do not commence new suits." 417 F.3d at 751. However, the court did not draw a bright-line rule because it continued: "We can imagine amendments that kick off wholly distinct claims, but the workaday changes routine in class suits do not." *Id.*

The Seventh Circuit has drawn a distinction between the two kinds of amendment. For example, the court held that a post-CAFA amendment to expand the class from a statewide class action to a nationwide class action constituted the kind of "workaday change" mentioned in *Schorsch. See Schillinger v. Union Pac. R.R. Co.,* 425 F.3d 330, 334 (7th Cir.2005). Plaintiff argues that he, too, is attempting only to expand his class definition. Nevertheless, Moniz loses sight of the important distinction between *Schillinger* and his own case, namely that the plaintiffs' amendments to the class definition in *Schillinger* did not alter the substance of their original allegations while Moniz's class definition in this case is expanded in order for plaintiff to allege new and unrelated misconduct for which to hold defendants liable.

Plaintiff relies most on the *Schorsch* case in which the plaintiff amended the complaint to expand the proposed class

---

**3.** Although plaintiff's Second Amended Complaint makes passing reference to the fact that Neoprene is a product of the Bayer defendants, it does not differentiate between the defendants or their products in its blanket allegations of price-fixing, thus implicitly (but implausibly) accusing the defendants who do not manufacture Neoprene of participating in a conspiracy to fix its price and eliminate competition.

from consumers of one computer-printer product that contained an allegedly faulty chip to consumers of two other computer-printer products that contained the same allegedly faulty chip. 417 F.3d at 749–50. The Seventh Circuit held that the original complaint put Hewlett–Packard on sufficient notice to defend against the amended complaint and, as a result, the amendment would relate back to the original complaint and did not commence a new action under CAFA. *Id.* at 751. Despite expanding the class definition, plaintiff's amendment did not alter the substance of his original allegations because the alleged misconduct remained focused on the allegedly faulty chip.

Defendants, on the other hand, have chosen to rely primarily on the *Knudsen II* case in which the plaintiff originally brought suit against Liberty Mutual in Illinois state court in March, 2000, asserting claims based on the methods used by Liberty Mutual to calculate reimbursement of medical expenses. *Knudsen II*, 435 F.3d at 756. On February 25, 2005, just days after the enactment of CAFA, the plaintiffs sought to expand the class by amending the complaint to add the insureds of Liberty Mutual Fire Insurance Company which was not an original named defendant. Defendants removed but the Seventh Circuit remanded, holding that the amendment did not commence a new suit because Liberty Mutual remained the only defendant and no new claims or parties were added. *Id.* On September 29, 2005, the Illinois state court certified amendments to the class that added claims involving all affiliates and subsidiaries of Liberty Mutual that were not based on the same underlying acts as the claims in the original complaint. *Id.* at 756–57. The Seventh Circuit held that the original complaint did not give Liberty Mutual notice that the plaintiffs contested any decisions made by its affiliates and subsidiaries and that the new claims added after February 18, 2005, commenced new litigation under CAFA. *Id.* at 757–58.

■ Having closely analyzed the pertinent decisions of the Seventh Circuit, both of which were authored by Judge Easterbrook, the Court finds *Knudsen II* more analogous to the instant case. Plaintiff's putative class is the result of his inclusion of a new claim arising out of the addition of a new product, Neoprene, that was not previously part of the litigation. The *Schorsch* decision is inapposite because, here, plaintiff's amendments altered the substance of his original allegations. In *Schorsch*, despite expanding the class definition, plaintiffs' allegations remained focused on the allegedly faulty chip whereas here, plaintiff alleged a price-fixing conspiracy on the part of defendants with respect to several chemicals (EPDM, NBR and Urethanes) and now has added a new and unrelated claim of conspiracy regarding a heretofore unmentioned product that is distinct from his prior allegations.

In essence, Moniz has added a novel claim to the existing case. The complaint that he filed on February 10, 2005, made no mention of Neoprene nor even hinted that any of the defendants was accountable for an alleged price-fixing conspiracy concerning that product. Plaintiff's amendments are not "workaday changes". His new claims are distinct and do not arise from the same conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading. The Neoprene claims do not relate back and this Court concludes that defendants have carried their burden and plaintiff has commenced new litigation for purposes of CAFA.

## ORDER

In accordance with the foregoing analysis, Plaintiff's Motion to Remand (Docket No. 4) is **DENIED.**

**So ordered.**