# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1105

_____

Brian D. Hartis; Jacqueline H. Hartis,　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellants,　　　　　　*
　　　　　　　　　　　　　　　　　　*　　Appeal from the United States
　　　　v.　　　　　　　　　　　　　*　　District Court for the
　　　　　　　　　　　　　　　　　　*　　Western District of Missouri.
Chicago Title Insurance Company,　　　*
　　　　　　　　　　　　　　　　　　*　　　[PUBLISHED]
　　　　　　　　Appellee.　　　　　　*

_____

Submitted: March 3, 2009
Filed: March 13, 2009

_____

Before SMITH, HANSEN, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Brian and Jacqueline Hartis ("class representatives"), individually and on behalf of the putative class, appeal from the district court's denial of their motion to remand to state court, asserting that the district court erroneously concluded that the $5 million amount in controversy under the Class Action Fairness Act (CAFA) was satisfied. We vacate the district court's order and remand.

## I. *Background*

The class representatives filed a class action suit against Chicago Title Insurance Company ("Chicago Title") in Missouri state court alleging that Chicago Title failed to reimburse numerous customers for excess money collected at real estate

closings for recording fees. The class representatives alleged in their petition that Chicago Title retained $24 in excess recording fees charges related to the purchase of their home in Kansas City, Missouri, representing a $3 overcharge on one transaction and a $21 overcharge on a second transaction. According to the petition, "Chicago [Title] collected a recording fee from Missouri residents alone over a five year period on more than 71,000 transactions." The petition also alleged that Chicago Title acts as an escrow and disbursement agent in 16 other states and the District of Columbia and that, in many of those transactions, just as it did in the class representatives' transactions, Chicago Title kept for itself the excess money paid by purchasers for recording fees. The petition asserted a claim for conversion and sought money damages for the class members that was "fair and reasonable," reasonable attorneys' fees and expenses, and other relief. Chicago Title filed a timely notice of removal, invoking 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

In its notice of removal, Chicago Title asserted that it is deducible from the face of the petition that the amount in controversy exceeds $5 million. Chicago Title pointed to the petition's contention that Chicago Title collected a recording fee from Missouri residents alone on more than 71,000 transactions over a five-year period. Chicago Title reasoned that, due to the volume of transactions that it has conducted in just one state over a five-year period and the fact that the proposed class, as outlined in the petition, includes potential members in 17 states and the District of Columbia, the amount in controversy clearly exceeds $5 million. Chicago Title provided the district court with an affidavit from Janet E. Ellis, Senior Vice President and Chief Technology Officer of Fidelity National Management Services, in which Ellis stated that she provides information technology support services to Chicago Title and that, based on the information available to her in her professional capacity, Chicago Title collected recording fees in approximately 2,235,000 transactions during the five-year period between 2002 and 2006. Chicago Title suggested that if the class representatives' overcharges ($12 on average per transaction) are typical of the putative class, and if the district court looked at either 71,000, the transaction quantity

figure presented by the class representatives for a five-year period in Missouri, or 2,235,000, the national figure presented in the Ellis affidavit, the $5 million jurisdictional minimum is clearly exceeded.

The class representatives moved to remand to state court, asserting that the district court lacked subject matter jurisdiction because a preponderance of the evidence does not indicate that the amount in controversy exceeds $5 million. They maintained that Chicago Title's jurisdictional argument, as it stands, which is based on the number of transactions in which an overcharge could have occurred rather than on actual evidence of overcharges, is insufficient. They contended that in order to meet its burden, Chicago Title must provide extensive evidence of specific overcharges sufficient to prove up the $5 million threshold.

The district court denied the class representatives' motion to remand, stating that "[t]he jurisdictional question at hand is not whether the damages are greater than the requisite amount 'but whether a fact finder might legally conclude that they are.'" Appellants' Addendum at 3 (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). The court noted that because the class representatives were not demanding a specific monetary amount, it had to make a factual inquiry into whether the jurisdictional amount was satisfied. The court also found that, in determining whether the jurisdictional amount was met, it could "consider the potential value of Plaintiffs' attorneys' fees." *Id.* at 2. In its first determination of jurisdiction, the district court wrote:

> Based on the damages alleged in Plaintiffs' petition, the size of the potential class in this case, Plaintiffs' allegation that Chicago Title over-collected in many of its transactions, and the information provided by Defendant in the Ellis affidavit, the Court finds this case meets the $5 million jurisdictional threshold set forth in CAFA.

(Add. at 4.)

The potential value of attorneys' fees (whether statutory or not) is not listed as a factor in the district court's calculation of the jurisdictional amount in this initial finding.

Later in its order, when discussing whether or not the jurisdictional threshold would be reached if Chicago Title's transactions in only 12 states were considered (as opposed to the 17 states and the District of Columbia pleaded in the petition), the court did include "the potential for collection of significant attorneys' fees" as a factor in determining that, even with a reduced number of states in the putative class, the $5 million threshold was met. The court wrote:

> The proposed class, based on the language in Plaintiffs' petition, includes potential claimants in seventeen states and the District of Columbia, and could involve millions of transactions. Even if the Court were to accept Plaintiffs' assertion, as argued in their motion for remand, that the case is ostensibly limited to claimants in only twelve states, an analysis of Plaintiffs' petition and Defendant's affidavit suggests the number of potential claims is still conservatively in the multiple hundreds of thousands, if not millions. These numbers, coupled with the potential for collection of significant attorneys' fees in this case, indicate, by a preponderance of the evidence, that the amount in controversy exceeds $ 5 million. The Court further finds that exercising federal jurisdiction in this case is consistent with the purpose and intent of CAFA—the expansion of federal jurisdiction over class actions "with a strong preference that interstate class actions should be heard in a federal court if removed by any defendant." *See*, S. Rep. No. 109-14, at 42 (2005).

*Id*. at 4–5.

Thereafter, the class representatives timely filed with this court an application for permission to appeal, pursuant to 28 U.S.C. § 1453(c), which we granted.

II. *Discussion*

On appeal, the class representatives contend that the district court erred in denying their motion to remand, setting forth the following three reasons: (1) the district court correctly acknowledged that the removing party bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million but erroneously stated that such standard could be met if a fact finder "might legally conclude" that the class's damages are greater than the jurisdictional amount; (2) the district court erred in relying on attorneys' fees to find that the requisite amount in controversy was met because only *statutory* attorneys' fees can be counted towards the jurisdictional amount and they sought no statutory fees in their state court petition; and (3) the record before the district court was insufficient to support the conclusion that it is more likely than not that the amount in controversy exceeds $5 million because the district court engaged in speculation and made assumptions wholly unsupported by, and contrary to, the record.

We recently enunciated the burden of proof applicable in cases governed by CAFA. "[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum." *Bell v. Hershey Co.*, __F.3d__, 2009 WL 465949, at *4 (8th Cir. Feb. 26, 2009) (slip op.). Contrary to the class representatives' first argument, we made clear in *Bell* that "[u]nder the preponderance standard, '[t]he jurisdictional fact . . . is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are . . . .'" *Id*. at *5 (quoting *Kopp*, 280 F.3d at 885) (alterations and emphasis added in *Bell*). Here, the district court used the correct preponderance of the evidence standard.

But, when determining whether a party seeking removal has satisfied the amount in controversy by a preponderance of the evidence, "only *statutory* attorney fees count toward the jurisdictional minimum calculation." *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) (emphasis added). It is

unclear to us whether or not the district court included an amount for attorneys' fees in its calculation of the jurisdictional amount. There is a conflict between its first finding of jurisdiction and its later finding. The first does not mention potential significant attorneys' fees as a factor; the later one does. We note that while the class representatives make no claim for statutory attorneys' fees in their petition, they do make a claim for "reasonable" attorneys' fees. Accordingly, we must necessarily remand to the district court for a redetermination of whether Chicago Title has proven, by a preponderance of the evidence, that the amount in controversy is satisfied.

### III. *Conclusion*

Accordingly, we vacate the order below and remand to the district court with instructions to omit from its consideration the class representatives' claim for reasonable attorneys' fees in determining whether Chicago Title has proven, by a preponderance of the evidence, that the amount in controversy exceeds $5 million. On remand, if Chicago Title is able to prove by a preponderance of the evidence that the amount in controversy is satisfied, without resort to the claim for reasonable attorneys' fees, then remand to state court "is only appropriate if [the class representatives] can establish that it is legally impossible to recover in excess of the jurisdictional minimum." *Bell*, 2009 WL 465949, at *6.[1]

—————————————————

[1]Because we remand based on the district court's possible erroneous inclusion of the class representatives' claim for "reasonable attorneys' fees," we need not address the class representatives' final argument that the record before the district court was insufficient to support the conclusion that it is more likely than not that the amount in controversy exceeds $5 million.