In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-8027

IN RE:

SAFECO INSURANCE COMPANY
OF AMERICA, et al.,

*Petitioners.*

On Petition for Leave to Appeal
Under 28 U.S.C. § 1453(c).
No. 3:09-cv-00315-GPM-PMF—**G. Patrick Murphy**, *Judge*.

OCTOBER 22, 2009

Before RIPPLE, MANION and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. On February 11, 2005, F. Ryan Bemis, an Illinois chiropractor, filed a class action in the Illinois state court. On February 18, 2005, seven days later, the Class Action Fairness Act of 2005 became effective. Four years later, on March 25, 2009, the state court granted class certification. On April 24, 2009, the Safeco Insurance Company of America ("SICA") and Safeco Insurance Company of Illinois ("SICI") (collectively hereinafter referred to as "Safeco" or "petitioners") removed the action to the district court, but the district

court granted Dr. Bemis' motion to remand the action to the state court. Safeco then filed this petition for permission to appeal under 28 U.S.C. § 1453(c). We grant the petition for leave to appeal and, for the following reasons, affirm the judgment of the district court.

# I

## BACKGROUND

### A. The Parties and the Allegations

Dr. Bemis filed this action in Illinois state court, alleging that Safeco had employed a computerized bill payment program to underpay systematically claims made under automobile insurance policies. The introductory paragraph of the complaint established the gravamen of the action: "This is a case about a scheme by [SICA] and [SICI] (collectively, "Defendants" or "Safeco") and its Safeco insurer affiliates (such as American States) to mislead and improperly reduce payouts under medical payments coverage by using biased third party bill audit software programs to adjust those medical expense claims." S.A. 1. The complaint alleged three causes of action based on state law: (1) breach of contract,[1] (2) violation of various Illinois consumer fraud statutes and (3) unjust enrichment. The only named defendants were SICA and SICI. The complaint further explained that the suit was brought as a class action on behalf of:

---

[1] Dr. Bemis alleged that he is an assignee of an insured's rights under the relevant contracts. S.A. 3, 8.

> All insured persons and licensed medical providers who: (a) submitted first-party medical claims to a Safeco member company pursuant to a Safeco insurance policy; (b) had their claim submitted to computer review, [sic] (c) received or were tendered an amount less than the submitted medical expenses and [sic] (d) received or were tendered an amount less than the stated policy limits.

S.A. 9.[2]

SICA and SICI are both wholly owned subsidiaries of Safeco Corporation, which, in turn, is wholly owned by a holding company. The ultimate owner is Liberty Mutual Group Inc. SICA adjusts claims for some other companies owned by Safeco Corp. SICI only adjusts its own claims. S.A. 457. It appears that, at all relevant times, SICA adjusted claims for at least five other Safeco Corporation companies.[3]

In October 1997, Safeco Corporation acquired American States Financial Corporation, the corporate parent of six

---

[2] The complaint did not define the term "Safeco member company." The term "Safeco insurance policy" appears to mean an insurance policy issued by SICA or SICI because "Safeco" was defined to mean SICA and SICI. S.A. 1.

[3] These include General Insurance Co. of America, First National Insurance Co., Safeco Insurance Co. of Indiana, Safeco Lloyds Insurance Co., and Safeco National Insurance Co. Pet. Br. 7-8. It may also include two other companies owned by Safeco Corporation: Safeco Insurance Co. of Oregon and Safeco Surplus Lines Insurance Co. S.A. 460.

other insurance companies.[4] Prior to the acquisition, the American States companies were competitors of the Safeco companies. SICA did not begin to adjust claims made under policies issued by the American States companies until December 1998 at the earliest.

## B.  Proceedings in the State and Federal Courts

### 1.

The state court initially dismissed Count I of the complaint (breach of contract) because of insufficient evidence that the rights under the contract had been assigned to Dr. Bemis, but granted leave to amend. Dr. Bemis then filed a first amended complaint that contained the required assignment as an exhibit, but Safeco concedes that, in all other material respects, this pleading was identical to the initial complaint. Later, Dr. Bemis voluntarily dismissed the consumer fraud and unjust enrichment causes of action; only the breach of contract claim remains.

---

[4] These include American States Insurance Co., American Economy Insurance Co., American States Insurance Co. of Texas, American States Lloyds Insurance Co., American States Preferred Insurance Co., and Insurance Company of Illinois. S.A. 460. The petition suggests it was only five, but this does not comport with the record. Pet. Br. 8. The complaint did not define "American States" and nowhere else referenced that term, but it presumably refers to the American States Financial Corporation and its subsidiaries.

On March 25, 2009, long after the effective date of the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) ("CAFA"), Dr. Bemis sought, and was granted, class certification. The state court certified a class of:

> All persons insured by Safeco property and casualty insurance companies in [14 states] (and their assignee medical providers), who
>
> (a) during the period from January 1, 1997, to the date of this Order, submitted one or more claims for payment of medical expenses pursuant to an automobile policy's medical payments coverage;
>
> (b) had their claim(s) adjusted and reviewed by computer bill review software incorporating Ingenix "MDR modules;" and
>
> (c) received or were tendered payment in an amount less than the submitted medical expenses due to charges purportedly exceeding the usual, customary or reasonable amount based on the Ingenix "MDR modules."

S.A. 270.[5]

**2.**

Safeco then removed the action to the district court. The notice of removal explained that removal was premised on our decision in *Knudsen v. Liberty Mutual Insur-*

---

[5] The class definition also contained certain exceptions not relevant here. S.A. 270-71.

*ance Co.*, 435 F.3d 755 (7th Cir. 2006) (*Knudsen II*), which had held that a certified class definition that adds new claims which do not relate back to the original complaint may commence a new action for purposes of removal jurisdiction under CAFA. Dr. Bemis moved to remand, maintaining that no new action was commenced because the class definition related back to the initial complaint. He contended that the original complaint had provided notice that the claims were based on Safeco's role in adjusting the policies of the Safeco affiliates.

The district court granted the motion to remand. Noting that CAFA's grant of subject matter jurisdiction is available only for actions commenced after CAFA's effective date, February 18, 2005, the district court concluded that it lacked subject matter jurisdiction; in its view, the certified class definition related back to the pre-CAFA complaint. Applying Illinois' relation-back rule, 735 ILCS 5/2-616(b), the court concluded that SICA and SICI were on notice that Dr. Bemis intended to hold them liable for their role in the adjustment of claims based on the policies of affiliate companies prior to the effective date of CAFA. In ruling that the "new claims" commenced by the class certification related back to the original pre-CAFA complaint, the court pointed to the language of the complaint and to several instances in the state court record. The district court concluded "that it is disingenuous for [Safeco] to pretend that prior to the state court's grant of class certification [it] had no reason to believe that [Dr. Bemis] intended to try to hold [it] liable for the acts of affiliated companies." *Bemis v. Safeco Ins. Co. of America*, Civil No. 09-315, 2009 WL 1972169, at *7 (S.D.Ill.

July 8, 2009). Accordingly, the district court remanded the action to the state court.

Safeco then sought leave to appeal the district court's remand ruling under 28 U.S.C. § 1453(c).

## II

## DISCUSSION

We review remands based on jurisdictional defects de novo.[6] The burden of persuasion rests with the party asserting federal jurisdiction. *See Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006); *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004).

Safeco contends that this action is removable under CAFA because (1) the post-CAFA class certification definition adds claims that do not relate back to the original complaint, *see Knudsen II*, 435 F.3d 755, and (2) the class certification changed the scope of Safeco's potential liability from what it had been pre-CAFA. *See Marshall v. H&R Block Tax Servs., Inc.*, 564 F.3d 826 (7th Cir. 2009).

Removal of actions from state to federal court is governed by 28 U.S.C. § 1441. That statute provides that, except as otherwise provided, "any civil action brought

---

[6] *See Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009); *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009); *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009).

in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Under CAFA, federal courts have jurisdiction over cases in which the amount in controversy exceeds $5 million, the class contains at least 100 members, and, as relevant here, "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B). The district court found that there are more than 100 class members, that the amount in controversy exceeds $5 million exclusive of interest and costs and that Dr. Bemis is a citizen of Illinois, while SICA is a citizen of the State of Washington. Neither party suggests that the district court clearly erred in finding these jurisdictional facts, and our own examination of the record has not revealed any reason to question these findings.

As the district court recognized, CAFA is not retroactive. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005); *see also* Pub. L. 109-2, § 9, 119 Stat. 4 (2005) ("The amendments made by this Act shall apply to any civil action commenced on or after [February 18, 2005]."); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 n.2 (7th Cir. 2006). This action was filed before its effective date. Therefore, removal under CAFA is permissible only if the class certification order constitutes the commencement of a new action for CAFA purposes.

We have held, in consonance with all other circuits to have addressed the question, save one, that events occur-

ring after a complaint is filed may constitute the commencement of a new action for CAFA purposes.[7] Such events may include the addition of a new party, a new claim for relief or any other event that courts would treat as independent for limitations purposes. *See Springman v. AIG Mktg., Inc.*, 523 F.3d 685, 687 (7th Cir. 2008); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 749 (7th Cir. 2005); *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 807-08 (7th Cir. 2005) (*Knudsen I*). The petitioners submit that the post-CAFA class certification definition introduced new causes of action concerning claims made on policies issued by their non-party affiliates. Some of those companies did not become petitioners' affiliates until nearly a year into the class period and some did not have SICA adjust accident claims made against their policies for nearly two years after CAFA's effective date. These purported new claims commence an action for CAFA purposes only if they do not "relate back" to the initial pre-CAFA complaint. *See Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006).[8]

---

[7] *See Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405-06 (6th Cir. 2007); *Prime Care of Northeast Kansas, LLC v. Humana Ins. Co.*, 447 F.3d 1284, 1285-86 (10th Cir. 2006); *Braud v. Transp. Serv. Co. of Illinois*, 445 F.3d 801, 803-04 (5th Cir. 2006); *Plubell v. Merck & Co.*, 434 F.3d 1070, 1071-72 (8th Cir. 2006). *But see McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1145-48 (9th Cir. 2007).

[8] The petitioners do not suggest that the first amended complaint, which simply added the necessary evidence of the

(continued...)

We have reserved the question of whether federal or state law governs the relation-back analysis under CAFA (and have assumed that state law applies). *See Schorsch*, 417 F.3d at 750-51. This litigation does not require that we resolve this question. We twice have noted that Illinois' relation-back doctrine is, in all material respects, identical to the federal rule. *Marshall*, 564 F.3d at 829 (citing *Porter v. Decatur Mem'l Hosp.*, 882 N.E.2d 583, 591-93 (Ill. 2008)); *Springman*, 523 F.3d at 688. Furthermore, we apply the same relation-back rules to "new claims" added mid-action by class certification definitions as we do to amended complaints filed mid-action. *See Knudsen II*, 435 F.3d at 757. An amendment will relate back to the original complaint if the amendment alleges events "close in time and subject matter" to those previously alleged, and if they "led to the same injury." *Porter*, 882 N.E.2d at 593. The essential inquiry is whether "the original pleading furnishes the defendant with notice of the events that underlie the new contention." *Knudsen II*, 435 F.3d at 757.

In *Schorsch v. Hewlett-Packard Co.*, we examined when an amended complaint constitutes the commencement of a new action for CAFA purposes. 417 F.3d at 749. The plaintiff filed a complaint against Hewlett-Packard ("HP"), "proposing to represent a class of persons who purchased from HP drum kits for use in its printers." *Id.* The drum kits contained some of the machinery

---

[8] (...continued)

insured's assignment of rights to Dr. Bemis, initiated a new action for CAFA purposes.

that dispensed the toner to the paper. The kit also contained a computer chip that, when the machinery was sufficiently worn out that it could impact adversely printing quality or endanger the effectiveness of other components, prevented the printer from working until a new drum kit was installed. *Id.* The plaintiffs maintained that the inclusion of this computer chip injured consumers who wished to continue using the worn-out drum kits past HP's pre-programmed cut-off point. *Id.* After CAFA became effective, the plaintiff tendered an amended complaint that expanded the class definition from purchasers of drum kits to purchasers of all printer consumables (like toner cartridges for laser printers and ink cartridges for ink-jet printers) that also contained the same kind of computer chip. *Id.* at 749-50. We held that the change in the class definition did not constitute a new claim. We explained that "[f]rom its outset, this suit has been about HP's use of EEPROM chips to shut down its printers until a component has been replaced. The identity of the consumable is a detail." *Id.* at 750. We further noted that HP's attempted removal of the whole action—including the claim about the drum kit from the initial pre-CAFA complaint—suggested that it really believed there was only one claim. We reasoned that, if there were only one claim, the later amendments surely related back to the first. In our view, the challenged "transaction" in the relation-back analysis was HP's inclusion of the computer chips in its printer consumables, and the use of the computer chips was an "all or none affair" because HP had advanced no reason why it would be permissible to use them in one type of printer

consumable but not another. *Id.* Accordingly, the pro-
posed amended class definition did not commence a
new action.

Applying the analysis in *Schorsch* to this case, it is
apparent that the "new claims" added by the class certifi-
cation order relate back to the relevant transaction or
occurrence, *i.e.*, Safeco's use of the automated bill payment
system, alleged in the original complaint. The plaintiffs in
*Schorsch* believed they were shortchanged on their toner;
Dr. Bemis and the class members believe that they were
shortchanged on their insurance contracts. As in *Schorsch*,
Safeco has attempted to remove the entire action, not
just the purported new claims, suggesting that it believes
there to be only one cause of action. As in *Schorsch*, this
case also appears to be an "all or none affair": either the
automated billing software cheats claimants or it does not.

We cannot accept Safeco's contrary view of this matter.
It believes that this case is analogous to *Knudsen II*.
*Knudsen II* is based on an exception to the general rule
set forth in *Schorsch*. *Knudsen II* was brought against a
subsidiary of Liberty Mutual contending that it had
underpaid claims submitted as a result of a flawed auto-
mation system. Liberty Mutual removed the action after
a routine adjustment to the class definition, and the
district court ordered the case remanded because the
action had been commenced prior to CAFA's effective
date. We denied leave to appeal, *Knudsen I*, 411 F.3d at
808, but noted that, if Liberty Mutual Fire Insurance
Co.—the corporate entity actually responsible for claims
adjusting—were added, it might be able to remove the

claims against it. On remand, the state court entered a default judgment against Liberty Mutual because it concealed Liberty Fire's role as the proper defendant.

The plaintiffs then "sought more relief—*much* more relief." *Knudsen II*, 435 F.3d at 756 (emphasis in original). The state court acquiesced and certified a class including "[a]ll insured of Liberty Mutual Insurance Company, its affiliates and subsidiaries . . . who submitted medical bills covered by a Liberty Mutual Insurance Policy, and whose claims were paid for less than the medical charge, based upon the application of a medical cost and utilization database." *Id.* Moreover, because the state court had entered a default judgment, Liberty Mutual would be obligated to pay without regard to whether it had dishonored any insurance policy, any policy's terms, co-payment requirements, caps on allowable fees, or any other reason consistent with the contract language that might result in a payment for less than the amount submitted for payment. We reasoned that, although a complaint alleging that the insurance company mishandled its claims-adjusting database would be one claim regardless of who had issued the policy, Liberty Mutual did not do all of the adjusting work. *Id.* at 757. Two of the affiliates had done their own adjusting, using their own software. *Id.* One affiliate, acquired in 1998, had done its own adjusting since 1985. Yet, the class definition employed would reach back to that year, bringing in claims against a separate entity, which, at the time, had had nothing to do with the named defendants. *Id.* The certified class might make Liberty liable for claims against other corporations with which it

was not affiliated at the time the claims were submitted, for whom it did not perform adjusting services and in the absence of any theory of vicarious liability. *Id.* Accordingly, we held that the certified class definition, which would have required Liberty Mutual "to pay on account of other insurers' decisions taken long ago under different rules for calculating proper payment, and without any opportunity to defend itself on the merits or even insist that the policies' actual terms be honored," constituted a new claim. *Id.* at 758. Consequently, the district court should not have remanded the case. *Id.*

*Schorsch* and *Knudsen II* make clear that, for purposes of determining whether the "new claims" in this case relate back, the relevant transaction is Safeco's use of the Ingenix claims-processing system regardless of what affiliate wrote the policies that Safeco later adjusted. *See Schorsch*, 417 F.3d at 750; *Knudsen II*, 435 F.3d at 757. The question then becomes whether the allegations of the pre-CAFA complaint sufficiently placed Safeco on notice of the claims against it based on adjustments that originated with its affiliated companies. *See Knudsen II*, 435 F.3d at 757.

We believe the district court correctly followed the general rule of *Schorsch* rather than the exception to that rule crafted in *Knudsen II*. First, unlike the situation in *Knudsen II*, the pre-CAFA complaint in this case put Safeco on notice that its actions in adjusting claims based on policies written by affiliate corporations were within the scope of the complaint. Second, and also unlike *Knudsen II*, the class definition implicitly excludes claims adjusted by affiliate companies.

With respect to the question of notice, it is important to recall that SICA and SICI make no argument about the affiliated companies for whom SICA always had acted as claims adjustor. Rather, their argument is limited to those companies that were acquired in 1997—the American States companies. The opening paragraph of Dr. Bemis' pre-CAFA complaint explains, "This is a case about a scheme by [SICA] and [SICI] (collectively, "Defendants" or "Safeco") and its Safeco insurer affiliates (such as American States) to mislead and improperly reduce payouts . . . using biased third party bill audit software programs . . . ." S.A. 1. Unlike in *Knudsen II*, therefore, there is a firm basis for Dr. Bemis' contention that the petitioners have known from the outset of this action that it involved claims based on policies issued by these affiliate companies. Indeed, it appears that Safeco was well aware of the scope of Dr. Bemis' allegations because it moved to abate this case in favor of a separate case involving the American States companies on the ground that the two cases involved the "same cause." S.A. 26-30. While their motion to abate certainly did not constitute notice itself, Safeco's interpretation of, and actions based upon, the pre-CAFA complaint—including the filing of the motion to abate—are evidence that the pre-CAFA complaint provided the requisite notice of the inclusion of claims based on policies issued by Safeco affiliates in this action. *Knudsen II* rested on the determination that the defendants in that case could not have known of the increased potential liability; here, the petitioners did know. Accordingly, *Knudsen II* does not control.

Safeco stresses that American States companies were not acquired until ten months into the class period and that SICA did not adjust claims for American States policies until two years after the class period began. Safeco contends that it should not be held liable for policies issued by corporations over which it had no control. This concern is resolved in the class definition. The class is limited to claimants who had their claims adjusted by Safeco's use of one particular computer program. Safeco has not provided any basis to interpret the complaint as seeking to hold Safeco liable for claims adjusted by the American States affiliates before the adjustment of their accounts by the Safeco program. Indeed, it is difficult to see how a person who submitted a claim before the acquisition would have been insured at the relevant time by a "Safeco company," and, notably, the petitioners make no argument in this respect.

Safeco also contends that the district court ignored *Marshall v. H&R Block Tax Services, Inc.* 564 F.3d 826. In its view, *Marshall* teaches that, in a case where (1) a post-CAFA change in class certification expands a named defendant's potential liability to include liability for the conduct of its affiliates *and* (2) the pre-CAFA complaint did not specifically advance such an affiliate liability theory, a new action has been commenced that cannot relate back to the pre-CAFA complaint. Pet. Br. 12-13. Safeco also points to language in *Marshall* stating that, at least with respect to class actions initiated in Illinois, conspiracy or concerted action must be pleaded with specificity.

In *Marshall*, we held that decertification of the defendant class effectively commenced a new "action" because it expanded the defendant's potential liability by exposing it to liability for the conduct of its affiliates. 564 F.3d at 829. We also held that, despite language in the operative complaint explicitly alleging "joint and several, if not ultimate, liability" of the named defendant and its affiliates, the operative complaint did not provide the defendant notice that a joint and several liability theory might actually become operative mid-action and thus there was no relation back. *Id*. In discounting the language in the complaint alleging joint and several liability, we noted that "Illinois law requires that conspiracy or other concerted action be pleaded specifically." *Id*.

We believe that, at bottom, *Marshall* is compatible with our earlier holdings and does not alter the fundamental principle governing the relation back of amendments to a complaint, "new claims" added mid-action or alterations in the defendant class. The key remains adequate notice to the defendant of its potential liability. We are convinced that, when the complaint is read as a totality, the original complaint clearly placed Safeco on notice that it was facing liability for its use of the computer program in adjusting the accounts of its affiliates' policy holders. Routine, "workaday" changes to class definitions do not create new litigation for CAFA purposes. *See Schorsch*, 417 F.3d at 751.

## Conclusion

For the foregoing reasons, we grant the petition for leave to appeal and affirm the judgment of the district court.

PETITION FOR LEAVE TO APPEAL GRANTED;
JUDGMENT AFFIRMED