**Charles MILLER, et al., Plaintiffs,**

v.

**VOLKSWAGEN OF AMERICA, INC., et al., Defendants.**

**Case No. 3:11 CV 2377.**

United States District Court, N.D. Ohio, Western Division.

Feb. 23, 2012.

---

Dennis E. Murray, Sr., Donna Jean A. Evans, Murray & Murray, Sandusky, OH, Juan P. Bauta, II, Bauta & Associates, Coral Gables, FL, for Plaintiff.

Hugh J. Bode, Martin T. Galvin, Reminger & Reminger, Cleveland, OH, Daniel V. Gsovski, Jeffrey L. Chase, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

JACK ZOUHARY, District Judge.

### INTRODUCTION

This case has a long history—seven and a half years and counting.

This is a class action against Defendant Volkswagen of America, Inc. ("Volks-wagen") commenced in the Erie County Common Pleas Court in August 2004. Defendant filed a Notice of Removal on November 3, 2011, asserting jurisdiction under the Class Action Fairness Act ("CAFA") (Doc. No. 1). Pending before this Court is Plaintiffs' Motion to Remand (Doc. No. 6). Defendant opposed (Doc. No. 12); and Plaintiffs replied (Doc. No. 13). This Court held a record hearing on January 17, 2012.

### BACKGROUND

This class action arises from Plaintiffs' allegations that the front bumper assembly of VW Jettas (model years 1999–2003) were manufactured with inferior materials, resulting in considerable damage from ordinary contact with standard curbs or stops due to the vehicle's low clearance. Plaintiffs sought to certify two separate classes in state court, including a broad class composed of all individuals and entities who owned or leased a 1999–2002 Jetta in Ohio. The state court declined to certify that class, but did certify a narrower class after two days of evidentiary hearings in 2007. The certified class was defined as:

> All individuals and entities in Ohio who purchased, leased or acquired a 1999, 2000, 2001 or 2002 Volkswagen Jetta and who incurred expenses not covered or reimbursed by Volkswagen, when the vehicle suffered damage causing the front bumper assembly to separate from the body of the car as a result of contact of the underbody of the vehicle with a wheel stop, tire barrier or curb, during the period of time wherein the New Car Warranty for that vehicle was in effect.

An Ohio appellate court affirmed the class certification in 2008, and the Ohio Supreme Court denied review.

In February 2005, six months after this suit was filed in Ohio state court, a similar class action was filed in an Oklahoma state

court asserting the same design failure for 1994–2003 Jettas. The Oklahoma class, once certified, consisted of all those owners in the United States who purchased or leased a 1999–2003 Jetta.

Defendant sought to settle the Ohio and Oklahoma actions beginning in December 2010. According to Plaintiffs, the contours of a nationwide settlement were reached, where Defendant would compensate a class of current or former owners of 1999–2002 Jettas. Ohio, however, was eventually excluded from the settlement due to a disagreement on what role the Ohio judge would play in determining attorney fees for the Ohio class members (Doc. No. 6 at 3). The Oklahoma case proceeded to a final agreement specifically excluding class members certified in the Ohio case. The agreement has not been filed with the Oklahoma court, and Defendant has not yet sought court approval (Doc. No. 6 at 4).

In September 2011, based on the Oklahoma class allegations and the class certified by the Oklahoma court, Plaintiffs here sought leave to file an Amended Class Action Complaint. The original Complaint alleged causes of action for breach of express and implied warranties for Jetta model years 1999–2002; the Amended Complaint added causes of action for violations of the Ohio Consumer Sales Practices Act ("OCSPA"), R.C. § 1345 *et seq.* (Count III), and for fraud by concealment (Count IV). The Amended Complaint also sought to add the model year 2003 to the Ohio class already certified, as the Oklahoma court deemed the 2003 model to have the same design defect as the 1999–2002 vehicles. Lastly, the Amended Complaint sought to certify an additional class of all individuals and entities in Ohio who currently own or were the original owners of 1999–2003 Jettas. This new class is designated in the parties' briefs as "Class 1." The original class, certified by the Ohio court in 2007, is designated as "Class 2."

Plaintiffs were granted leave, and the Amended Complaint was filed on November 1, 2011. Two days later, Defendant filed a Notice of Removal with this Court (Doc. No. 1). Defendant asserts removal is proper pursuant to CAFA because: (1) Plaintiffs' addition of model year 2003 to the currently certified Ohio class is a "new claim" giving rise to removal jurisdiction; (2) Plaintiffs' addition of claims on behalf of proposed Class 1, though untimely, are also "new claims;" (3) Plaintiffs' proposed Class 1 consists of approximately 20,000 individuals and CAFA's amount-in-controversy requirement of $5 million has been satisfied.

Plaintiffs disagree with each of Defendant's contentions, urging this Court to remand because: (1) the addition of model year 2003 "relates back" and does not create a "new cause of action" for CAFA purposes; (2) the addition of claims on behalf of proposed Class 1 is conceded to be untimely and cannot be the basis for CAFA jurisdiction; and (3) the proposed class size is less than 400 individuals and the claims are nowhere near $5 million.

### DISCUSSION

■ CAFA gives federal courts diversity jurisdiction over putative class actions where at least one defendant is diverse from at least one plaintiff ("minimal diversity"), the putative class consists of over 100 members, and the amount-in-controversy with respect to the entire putative class exceeds $5 million. 28 U.S.C. § 1332(d)(2). CAFA also creates an exception to the "one year rule" of 28 U.S.C. § 1446(b), and permits removal in a diversity action even if it occurs more than one year after the complaint was filed. 28 U.S.C. § 1453(b); *Smith v. Nationwide Prop. & Cas. Ins.*, 505 F.3d 401, 406–07 (6th Cir.2007). While CAFA allows removal during the pendency of the state

court litigation, the defendant must initiate removal within thirty days of the case becoming removable. *Id.* at 407. Furthermore, CAFA, effective in 2005, does not apply retroactively—removal is only proper if amendments to the existing class action create a "new" cause of action postdating CAFA. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 571, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). The removing defendant has the burden of establishing all jurisdictional prerequisites by a preponderance of the evidence. *Smith,* 505 F.3d at 404.

Plaintiffs concede "the requisite diversity of citizenship exists" under CAFA (Doc. No. 6 at 5). Indeed, complete diversity exists because Defendant is a citizen of New Jersey, where it is incorporated, and Virginia, where it maintains its principal place of business, and the putative class members are all citizens of Ohio (Doc. No. 1–2 at 2). Likewise, there is no dispute this case exceeds CAFA's 100 class-member requirement. Therefore, the issues in this case are twofold: whether any of Plaintiffs' claims arose after CAFA's effective date of 2005 and, if so, whether Defendant has met its burden of demonstrating CAFA's $5 million amount-in-controversy requirement by a preponderance of the evidence.

**The Addition of 2003 Model Year to Plaintiffs' Breach of Warranty Claims of the Currently Certified Class Does Not Create a "New Cause of Action"**

■ This Court finds Plaintiffs' addition of the 2003 model year Jetta to the currently certified class is a routine modification of the class definition—not an amendment creating an entirely new cause of action for CAFA purposes. As discussed above, Plaintiffs sought to add model year 2003 to the already certified Ohio class because the Oklahoma court deemed that year to have the same design defect as earlier vehicles.

While the Sixth Circuit has not decided whether an amendment to a class definition commences a "new action" for CAFA purposes, the Seventh Circuit in *Schorsch v. Hewlett–Packard Co.,* is persuasive on this point. 417 F.3d 748, 749 (7th Cir. 2005). In *Schorsch,* the court held "amendments to class definitions do not commence new suits." *Id.* at 751. The court drew a distinction between amendments that "kick off wholly distinct claims," and those tantamount to a "workday change"—that is, those that do not alter the substance of the original allegations in any way. *Id. Schorsch* was reinforced in a subsequent Seventh Circuit opinion emphasizing "the expansion of a proposed class does not change the parties to the litigation nor does it add new claims." *Schillinger v. Union Pacific R. Co.,* 425 F.3d 330, 334 (7th Cir.2005); *see also Powers v. Hamilton County Public Defender Com'n,* 501 F.3d 592, 619 (6th Cir.2007) ("[D]istrict courts have broad discretion to modify class definitions.").

Here, as in *Schorsch* and *Schillinger,* Plaintiffs' proposed amendment adding the 2003 model year does not alter the substance of the original allegations against Defendant, does not change the theory of liability, and does not expand allegations to reach new and unrelated misconduct. Rather, the "allegations remain focused on the defective VW Jetta bumper and upon [Defendant's] refusal to acknowledge the defect and cover the repairs under the expressed and implied warranties" (Doc. No. 6 at 12). In short, Plaintiffs have not created a "new cause of action" giving rise to CAFA removal.

**The Addition of Two New Causes of Action to the Currently Certified Class Does Not Create a "New Cause of Action" Because the New Claims "Relate Back"**

Plaintiffs also added causes of action for violations of the OCSPA, and for fraud by

concealment, on behalf of the currently certified Ohio class. Plaintiffs argue these two additional counts in their Amended Complaint may be pursued, along with the breach of warranty claims initially pled, because they relate back to the original Complaint (Doc. No. 13 at 3). This Court agrees.

■ The addition of new claims for relief commences a "new action" under CAFA only when those new claims do not relate back to the original pleading. *See, e.g., In re Safeco Ins. Co. of America,* 585 F.3d 326, 330 (7th Cir.2009); *Plubell v. Merck & Co.,* 434 F.3d 1070, 1071–72 (8th Cir.2006). Therefore, the question for this Court is whether, under applicable state law, Plaintiffs' new claims "relate back" to the original filing. *See Phillips v. Ford Motor Co.,* 435 F.3d 785, 787 (7th Cir. 2006); *see also Hall v. State Farm Mut. Auto. Ins.,* 215 Fed.Appx. 423, 425 n. 1 (6th Cir.2007). Ohio Civil Rule 15(C), the applicable relation back rule in this case, provides "[w]henever the claim or defense asserted in the amended pleading ar[ises] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Under this Rule, the intervening running of a limitations period does not prohibit an amendment so long as the amendment "relates back" to the original filing.

■ Because Plaintiffs' new legal theories, for violations of the OCSPA and for fraud by concealment, arise out of the same underlying "conduct, transaction, or occurrence" alleged in the original Complaint, they relate back and do not constitute new claims for CAFA purposes. The new claims are directly related to Plaintiffs' original allegations and are based on events "close in time and subject matter" that resulted in the injury initially alleged.

*In re Safeco,* 585 F.3d at 330–31. In other words, the original pleading provided Defendant with adequate notice of the events underlying the two added claims. *Id.* Moreover, the added claims are not time-barred, unlike Plaintiffs' claims on behalf of proposed Class 1 which are untimely because the tolling of the statute of limitations ended when the Ohio state court declined to certify that class. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) ("[O]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied."). The OCSPA and fraud by concealment claims, to the extent asserted on behalf of the currently certified class, are timely and relate back to the original Complaint. As such, these claims do not constitute new litigation under CAFA.

### Plaintiffs' Time–Barred Claims May Give Rise to Removal Jurisdiction

The parties agree that claims for Plaintiffs' proposed Class 1—asserted on behalf of all owners and lessees of 1999–2003 Jettas—are time-barred and may not be maintained because the state court declined to certify a similarly defined class, thereby suspending any tolling of those claims. *See Crown,* 462 U.S. at 354, 103 S.Ct. 2392. The parties also agree these time-barred claims cannot relate back to the original Complaint and would be "new causes of action filed as of November 1, 2011" (Doc. No. 6 at 10). The question for this Court is whether it is prevented from exercising jurisdiction over these "new claims," which do not relate back, because they are barred by the statute of limitations.

Plaintiffs argue this Court cannot exercise jurisdiction over these claims because they are *ipso facto* time-barred. While

Plaintiffs concede "jurisdiction for a matter removed from State court is determined upon the asserted claims at the time of removal" and "not as of any subsequent amendments," they argue "a careful analysis of the [Amended Complaint] shows that the newly asserted causes cannot be maintained" because they "cannot create federal jurisdiction, where none exists" (Doc. No. 6 at 10). In other words, "CAFA jurisdiction cannot be based upon new claims which, after judicial scrutiny, cannot be maintained" (Doc. No. 6 at 10). Essentially, Plaintiffs contend the dismissal of time-barred claims is not a post-removal event because the claims arrived to this Court as "nullities" requiring dismissal (Doc. No. 6 at 10).

Plaintiffs cite no authority for their "notion that a court's jurisdiction depends on the merits of a claim" (Doc. No. 12 at 7). Defendant argues whether claims are time-barred, or otherwise without merit, "is not a jurisdictional question" (Doc. No. 12 at 7). Because jurisdiction is determined at the time of removal, any subsequent event, whether beyond Plaintiffs' control or done deliberately, cannot oust this Court of jurisdiction (Doc. No. 12 at 7) (citing *St. Paul Mercury Indem. v. Red Cab Co.*, 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

■ This Court agrees with Defendant that the statute of limitations is not jurisdictional. *See, e.g., United States v. Titterington*, 374 F.3d 453, 458–59 (6th Cir. 2004) (holding statute of limitations defense is a non-jurisdictional issue that may be waived); *see also Day v. McDonough*, 547 U.S. 198, 202, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006). Generally, untimely claims are properly before a court until a party asserts the statute of limitations as an affirmative defense. However, this case presents a somewhat novel situation. Both parties agree Plaintiffs' "new claims"

are a sham—legally insufficient—that cannot be pursued in this case (Doc. No. 6 at 10, Hearing at 29). This Court is wary of asserting subject matter jurisdiction over a complex class action, pending in state court for over seven years, only to immediately dismiss the sole ground giving rise to its jurisdiction. In any event, because removal is inappropriate on other grounds, this Court need not decide this issue.

**Plaintiffs Cannot Defeat CAFA Jurisdiction By Stipulating to Reduce the Amount of Damages Sought Post–Removal**

Plaintiffs filed a Stipulation regarding damages, arguing the amount-in-controversy did not exceed the CAFA jurisdictional amount at the time of removal, and further they will not accept recovery in excess of $5 million (Doc. No. 20). Defendant argues the Sixth Circuit opinion in *Rogers v. Wal–Mart Stores, Inc.* precludes Plaintiffs from defeating this Court's removal jurisdiction by unilaterally stipulating to an amount less than the requisite $5 million under CAFA. 230 F.3d 868, 872 (6th Cir.2000). In turn, Plaintiffs argue *Rogers* has been "effectively abrogated" by the Supreme Court in *Powerex Corp. v. Reliant Energy Servs.*, 551 U.S. 224, 232, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007), and note that various district courts in this Circuit have held as much. *See, e.g., Roberts v. A & S Building Sys., L.P.*, 2008 WL 220627, *1, 2008 U.S. Dist. LEXIS 6309, *3 (E.D.Tenn.2008). Alternatively, Plaintiffs contend *Rogers* is inapplicable to post-removal stipulations that "clarify" the amount of damages sought in the complaint, as opposed to those reducing the demand made in the initial pleading.

The plaintiff in *Rogers*, who was seeking remand, argued the amount-in-controversy requirement for diversity jurisdiction was not met because she had stipulated her

demand for damages would not exceed the jurisdictional requirement at any time in the future. *Id.* at 870. While the Sixth Circuit recognized that as "master of the claim," the plaintiff could allege an amount-in-controversy below the jurisdictional amount to preclude removal, it held that a *post-removal* stipulation did not eliminate the district court's removal jurisdiction. *Id.* at 872. In so holding, the court looked to *St. Paul Mercury*, 303 U.S. at 290, 58 S.Ct. 586, and *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992).

In *St. Paul Mercury*, the Supreme Court considered whether a post-removal amendment of a complaint could destroy diversity jurisdiction. In holding it could not, the Court stated "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury*, 303 U.S. at 290, 58 S.Ct. 586. The Sixth Circuit reiterated this holding, finding "events occurring after removal that reduce the amount in controversy do not oust jurisdiction." *Rogers*, 230 F.3d at 872. In other words, because "jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint." *Id.* (citing *In re Shell Oil Co.*, 970 F.2d at 356); *see also Williamson v. Aetna Life Ins.*, 481 F.3d 369, 375 (6th Cir.2007) ("Jurisdiction is determined at the time of removal, and subsequent events, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached.") (internal citations omitted). *Rogers* explained: "If plaintiffs were able to defeat jurisdiction by way of a post-removal stipulation, they could unfairly manipulate proceedings merely because their federal case begins to look unfavorable." 230 F.3d at 872.

*Rogers* reaffirms that events occurring after removal are irrelevant for jurisdictional purposes—that much is clear. Notwithstanding, Plaintiffs argue "*most courts in this Circuit that have reviewed this issue have held that Rogers was abrogated by the United States Supreme Court in 2007*" (Doc. No. 21 at 1) (emphasis added). Plaintiffs' statement is incorrect. Only one district court has found *Rogers* abrogated by *Powerex. See Roberts*, 2008 WL 220627 at *1, 2008 U.S. Dist. LEXIS 6309 at *3. Other courts in this Circuit continue to recognize *Rogers* and have followed its holding that post-removal stipulations do not defeat subject matter jurisdiction. *See e.g., Driscoll v. Wal–Mart Stores East, Inc.*, 2009 WL 4730709, *1, 2009 U.S. Dist. LEXIS 115389, *3 (S.D.Ohio 2009); *Wisniewski v. Cheema*, 2009 WL 2222581, *2, n. 4, 2009 U.S. Dist. LEXIS 62835, *2 n. 4 (E.D.Mich.2009); *Mt. Clemens Auto Ctr., Inc. v. Hyundai Motor Am.*, 844 F.Supp.2d 804 (E.D.Mich.2011).

A careful reading of *Powerex* shows it did not abrogate *Rogers*. First, nothing in *Powerex* disturbed the principle set forth by the Supreme Court in *St. Paul Mercury* as recognized by the Sixth Circuit in *Rogers*. While the Court noted a case could "be properly removed and yet suffer from a failing in subject-matter jurisdiction that requires remand," it explicitly left intact the "general rule that post-removal events do not deprive federal courts of subject matter jurisdiction." *Powerex*, 551 U.S. at 232 n. 1, 127 S.Ct. 2411 (emphasis omitted); *see also In re Burlington Northern Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir.2010) ("[A] post removal amendment [ ] does not destroy CAFA jurisdiction" because "jurisdiction cannot be 'ousted' by later events."). Second, *Powerex* dealt with entirely different issues— whether the reach of 28 U.S.C. § 1447(c) was limited to defects in jurisdiction existing at the time of removal, and whether

Section 1447(d) precluded review of a district court's rulings under the Foreign Sovereign Immunities Act of 1976. It is undisputed *Rogers* did not address those specific issues.

Plaintiffs' alternate argument, that *Rogers* is inapplicable to a post-removal stipulation merely "clarifying" the amount of damages sought, as opposed to reducing the demand sought in the initial pleading, has merit. Some courts have accepted a clarification of damages as not prohibited by *Rogers*. *See, e.g., Baldori v. Delta Air Lines, Inc.,* 2011 WL 1212069, *3–4, 2011 U.S. Dist. LEXIS 33546, *10 (W.D.Mich. 2011).

*Baldori,* for instance, did exactly what Plaintiffs urge this Court to do: grant a motion to remand after finding the plaintiff's stipulation was a clarification—not a reduction—of the amount of damages claimed in the complaint. The court distinguished *Rogers* on its facts, holding that the plaintiff, unlike in *Rogers,* did not stipulate to cap his damages at an amount contradicting previous statements regarding the value of his alleged damages. *Id.* at *3, 2011 U.S. Dist. LEXIS 33546, at *9. Specifically, the plaintiff requested "unspecified damages" in excess of $25,000, but never claimed damages in excess of $75,000. The stipulation, unlike *Rogers,* "clarified his claim rather than reduc[ed] it." *Id.* Where "the complaint does not specify damages, it is reasonable to hold that a plaintiff's unrebutted post-removal declaration that the amount in controversy is less than $75,000 is sufficient to show lack of jurisdiction." *Id.* Other district courts have reached the same conclusion. *See, e.g., Howell v. Aramark Mgmt. Servs.,* 2008 WL 2951104, *1, 2008 U.S. Dist. LEXIS 58294, *2 (M.D.Tenn.2008) (post-removal stipulation did not reduce the amount sought by plaintiff and warranted remand); *King v. Household Finance Corp. II,* 593 F.Supp.2d 958, 961 (E.D.Ky. 2009) (post-removal stipulation established jurisdictional amount for the first time).

Given the vagueness of the Amended Complaint in this case, it is unclear whether Plaintiffs now seek to reduce or clarify the amount of damages. As in *Baldori,* Plaintiffs did not specify damages in excess of the jurisdictional amount, instead alleging unspecified damages of up to $1,500 for each class member. However, the Amended Complaint is silent with regards to the size of the class. Whether the Stipulation can be classified as a reduction or a clarification of damages turns on the number of class members, a number the parties concede is unknown. Regardless, this Court need not venture down this path because, as explained below, Defendant has not satisfied CAFA's amount-in-controversy requirement.

**Defendant Has Not Satisfied its Burden of Demonstrating the Amount–in–Controversy Requirement By a Preponderance of Evidence**

The First Amended Complaint specifically asks for compensatory damages in the form of "diminution of value" for every putative class member of up to $1,000, as well as damages for avoidable repairs in the range of $50 to $500 for each individual (Doc. No. 1–2 at 5). Defendant argues that because the proposed classes consist of approximately 20,000 individuals, the aggregated amount-in-controversy "substantially exceeds" CAFA's $5 million jurisdictional threshold (Doc. No. 12 at 4). Plaintiffs argue that because Defendant concedes the claims pertaining to proposed Class 1 are time barred, this Court can only consider the alleged damages for Class 2, with the addition of any 2003 Jetta owners who incurred un-reimbursed expenses (Doc. No. 13 at 5).

There is no presumption that the amount-in-controversy has been satisfied

when an action originally filed in state court is removed—it is incumbent upon the removing defendant to "show by a preponderance of the evidence that the amount in controversy requirement has been met." *Everett v. Verizon Wireless, Inc.,* 460 F.3d 818, 822 (6th Cir.2006); *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 572 (6th Cir.2001). "Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages." *Hayes,* 266 F.3d at 572. Furthermore, claims present when a suit is removed but subsequently dismissed from the case must be considered in determining whether the amount-in-controversy requirement for diversity jurisdiction is satisfied. *Everett,* 460 F.3d at 822 (citing *St. Paul Mercury,* 303 U.S. at 293, 58 S.Ct. 586). Accordingly, this Court must determine whether CAFA's jurisdictional amount is satisfied by considering all of Plaintiffs' claims, including time-barred claims that admittedly will be subsequently dismissed.

■ Here, Defendant has not demonstrated CAFA's amount-in-controversy requirement by a preponderance of the evidence. This is so for two reasons. First, Defendant assumes the proposed classes consist of approximately 20,000 individuals, but provides no evidence for its position other than the number of 1999–2003 Jettas sold in Ohio (Hearing at 7). However, the record is clear that the total number of Jettas sold in the state is not reciprocal to the number of individuals who will join the class in this case. Indeed, out of the 17,- 911 owners of 1999–2002 Jettas who were located, only 257—or approximately 1.5%—responded to the class notice. This figure is undisputed. An additional 5,205 model year 2003 Jettas were sold in Ohio, whose owners could be potential class members under the First Amended Complaint. However, there have been no mailings yet to the 2003 Jetta owners; any response from these owners could only be estimates (Hearing at 17–18).

While the parties agree the notice period for the current class has been closed for some time, Defendant argues "[o]ther people *could* come forward" (Hearing at 19) (emphasis added). Defendant, however, offers only speculation—not evidence. Nothing in the record indicates potential class members have attempted to respond to the notice, or that the parties expect the class to inexplicably grow this late in the litigation. Defendant likewise fails to explain how the response rate for 2003 Jetta owners will differ significantly from that of the current class, and provides zero evidence with regards to the size of the time-barred class. Plaintiffs, on the other hand, provide evidence that the jurisdictional amount will not be met.

If the same percentage of 2003 owners respond to the class notice as owners of 1999–2002 Jettas, an additional 78 individuals would join the class, bringing the total to 335 persons (Doc. No. 13 at 6). Because the Amended Complaint estimates a minimum recovery of $850 and a maximum recovery of $1,500 per class member, Defendant would face damages between $284,750 and $502,500. No one suggests attorney fees, even if considered, would bump the total damages to over CAFA's $5 million threshold. *See Hartis v. Chicago Title Ins.,* 656 F.3d 778, 781 (8th Cir. 2009) ("[W]hen determining whether a party seeking removal has satisfied the amount in controversy by a preponderance of the evidence, only statutory attorney fees count toward the jurisdictional minimum calculation.") (quotation omitted).

Even if this Court adds Plaintiffs' time-barred claims to the amount-in-controversy, the result would not change. For instance, assuming the untimely claims cause the estimated class size to double—even triple—the class would only consist of

1,005 individuals, yielding a maximum recovery of $1,507,500 ($1,500 × 1,005). The class would need to increase tenfold in order for the amount-in-controversy to reach CAFA's jurisdictional minimum. Of course, there is no evidence, let alone a preponderance of evidence, suggesting this is likely to occur.

Moreover, Plaintiffs provide evidence that Defendant tentatively agreed to a settlement reimbursing each class member up to $145 (Doc. No. 9 at 7). Because removal is proper only if jurisdiction exists at the time of removal, without considering subsequent events, this Court may only consider evidence of a settlement offer if it pre-dates removal. *See, e.g., Leys v. Lowe's Home Centers, Inc.,* 601 F.Supp.2d 908, 915 (W.D.Mich.2009). Here, the evidence of settlement discussions between the parties pre-dates removal. In those discussions, which spanned the course of a year, the actual amount under consideration as the negotiations were being finalized was $145 per class member (Doc. No. 20–1 at 1). This evidence is persuasive, as the parties agreed on this amount of damages before removal was even considered. The agreed-upon amount of the settlement is certainly reflective of what is at stake in this case, aside from the amount of "how much fees the lawyers were going to get" (Hearing at 27).

Therefore, even if this case involves 20,-000 class members as Defendant alleges—a number unsupported by the record—the actual amount-in-controversy would be, at maximum, $2.9 million ($145 × 20,000). Defendants offer no proof that attorney fees would bring the total within CAFA's jurisdictional purview.[1] Simply put, there

is no evidence attorney fees will elevate the amount-in-controversy over the $5 million threshold.

### CONCLUSION

This Court lacks subject matter jurisdiction over this class action because Defendant failed to demonstrate by a preponderance that the amount-in-controversy exceeds CAFA's $5 million requirement. Accordingly, Plaintiffs' Motion to Remand is granted.

IT IS SO ORDERED.

---

1. The rule is that "attorney fees are excludable in determining the amount of controversy" unless a statute "expressly allows the payment of such fees." *Williamson v. Aetna Life Ins.,* 481 F.3d 369, 376 (6th Cir.2007); *see*

*also Hartis,* 656 F.3d at 781. The only statute authorizing attorney fees in the Amended Complaint is the OCSPA, which provides for reasonable fees for knowing violations of the Act. *See* R.C. § 1345.09(F)(2).